TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00060-CR







Kathryn Williams, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT


NO. 00-3827, HONORABLE JULIE KOCUREK, JUDGE PRESIDING







 Appellant Kathryn Williams pleaded not guilty to charges of burglary of a habitation
with intent to commit aggravated assault. See Tex. Pen. Code Ann. § 30.02(a)(1) (West Supp.
2001). After waiving a jury trial, the district court found appellant guilty of the offense, determined
that she used a deadly weapon, and assessed punishment at twenty years in prison. Appellant raises
six issues contending (1) that the district court erred in finding the knife she used was a deadly
weapon and (2) that she received ineffective assistance of counsel during the plea-bargain process
and during the punishment phase of trial. We will affirm the district court's judgment.


Background


 Betsy Heaston, a case manager with Travis County Mental Health and Mental
Retardation, testified that on May 3, 2000, she went to appellant's house for her regular weekly visit.
Appellant had been diagnosed with a multiple personality disorder and Heaston visited her once a
week to assist her with life skills. Heaston had been working with appellant for three or four years.
Heaston arrived at appellant's house, noticed appellant's keys in the lock of her front door, and found
appellant asleep in her closet. She called to appellant a few times but when appellant did not awaken
Heaston put appellant's keys where she would find them easily when she awoke and left a note
saying she stopped by. 

 Heaston went home for lunch, and about 12:30 she heard someone pounding on her
back door which she keeps closed and locked. She unlocked and opened the door at which point
appellant immediately lunged inside and jumped on her. Appellant, who did not have Heaston's
consent to enter the house, had forced open the locked screen door. Appellant grabbed Heaston
around the neck with her left arm and yelled, "You f-----g b----h. You f-----g left the babies in the
closet." Heaston immediately realized that appellant held in her right hand a knife with a missing
handle. The knife was admitted into evidence. With her left arm around Heaston's neck and the
knife in her right hand, appellant forced Heaston into the dining room as she continued to yell at
Heaston about leaving the babies in the closet. Eventually, appellant allowed Heaston to sit down
while she paced back and forth in the dining room holding the knife. Heaston knew enough about
appellant's mental condition to know that she referred to her multiple personalities as babies. 
Heaston asked appellant if she could speak with either the Kathryn or the Amy personality. 
Appellant responded that Heaston had locked them in the closet and they could not get out. Heaston
then asked appellant, who was still in an angry state, what she wanted, to which appellant responded,
"I want to get out. I can't stand being in here with all of them." Appellant then walked into the
living room and Heaston called 911. She, however, did not have a chance to speak with a 911
operator due to continuing events.

 At this point, Heaston's son stopped by for a visit and as he walked into the house
Heaston called out to him to call the police. At this point, appellant again grabbed Heaston around
the neck with her right arm, this time holding the knife in her right hand very close to Heaston's neck
with the blade toward her throat. Heaston was fearful that the knife could cause her serious bodily
injury or death. Heaston's son saw appellant holding the knife against his mother's throat and he
backed out of the house and immediately ran to a neighbor's house to call police. Heaston's son
testified that he was fearful appellant would use the knife to seriously harm his mother. Appellant
told Heaston that she wanted to leave the house and told Heaston to get her keys. Heaston got her
keys off of the mantle and appellant forced her outside continuing to restrain Heaston by holding her
with her right arm around her neck and holding the knife in her right hand against Heaston's throat. 
When they got to the car, appellant changed her mind and forced Heaston back inside the house. 

 Appellant maneuvered Heaston into the dining room and let go of her neck. Heaston
moved to one end of the table. Appellant squatted down and began rocking, tapping her head against
the table. Heaston again asked to speak to the Amy personality and this time appellant responded.
Appellant agreed to give up the knife and she laid it on the table. Heaston hid the knife under some
papers on the table. Appellant produced another knife she had in her pocket and she also put it on
the table. Appellant again became angry and, as she walked into the kitchen, Heaston fled from the
house. Heaston went across the street and called 911. A neighbor noticed appellant walking down
the street with a kitchen knife in her hand. Finally, appellant got into a car and drove away. Heaston
and her son returned home and realized that a knife had been taken from the kitchen. 

 Soon, police officers arrived and recovered the two knives on the dining room table. 
They also noted fresh marks on the back door where appellant entered Heaston's house. Officer
Canizales testified at trial that based on his training and experience the knife appellant used to
threaten Heaston was capable of inflicting serious bodily injury. 

 Margaret Williams, appellant's psychotherapist, also testified at trial. (1) Williams
explained appellant's mental conditions as a dissociative disorder with multiple personality disorder,
a bipolar disorder, and a borderline personality disorder. Williams returned to her office around 1:00
in the afternoon to find appellant waiting for her. Appellant was curled up in a fetal position behind
a couch distressed and crying. Appellant told Williams she was worried about Heaston and
demanded that Williams call Heaston. Williams called Heaston's home and a police officer
answered the phone. He told Williams that she could talk to Heaston later. Williams attempted to
comfort appellant but appellant became very angry. Appellant then quickly changed her mood and
became very child-like, picked up a teddy bear and sat down in a chair. The police arrived soon
afterward and arrested appellant. 

 Appellant testified at trial and confirmed Heaston's version of the events. The court
found appellant guilty of burglary with intent to commit aggravated assault.

 During the punishment phase of trial, Susan Roller, an art therapist, testified that
appellant was one of her patients during 1989 and 1990. Roller ended her relationship with appellant
in July 1990 after appellant threatened her with a knife following a therapy session. During that
incident, appellant brandished a knife, handed Roller a note and demanded that Roller accompany
her. Roller stalled for time, afraid to leave with appellant. Finally, the telephone rang and Roller
told appellant the person on the other end of the phone was going to call the police. Appellant ran
out of Roller's office.

 In July 1992, Roller agreed to work with appellant when she was hospitalized at Shoal
Creek Psychiatric Hospital. While Roller was in a hospital hallway appellant approached her and
suddenly lunged at her. Over the next several years, on various occasions when Roller was out
walking her dog near her home she would notice appellant close by, apparently watching her. In
1999, appellant called and left a disturbing message on Roller's answering machine. Roller testified
that she felt appellant was a continuing threat to her safety. 

 Guadalupe Hernandez worked security at the highrise building where Roller lived. 
She testified that on April 3 or 4, 1999, appellant came into the lobby stating that she had a singing
telegram for Roller. Hernandez called upstairs to Roller and Roller told her to ask appellant to leave.
After arguing with Hernandez, appellant left the building and stood across the street. She phoned
the building again wanting to see Roller and stating that her car had broken down. Hernandez
recognized appellant's voice and told her she could not come into the building. 

 Heaston also testified at the punishment phase of trial. She explained how the
incident with appellant had changed the way she lives her life. She testified that she is working to
get over her fear. She testified that unless appellant were in prison she would not feel safe in her
own home. 

 Williams also testified at the punishment hearing that appellant had worked with
Margaret Santiago from the Alameda House for about ten years. Appellant visited Santiago's house
several times uninvited. On one occasion when appellant showed up at Santiago's house without
an invitation, Santiago called the police and, because appellant was delusional, they took her to the
hospital. On another occasion, after Santiago had moved out of Austin, appellant was found in the
back yard of Santiago's former house barking like a dog and attempting to hang herself from a tree. 

 Appellant also testified at the punishment hearing and told the court that she could
not hurt anyone. The court sentenced appellant to twenty years in prison. 

 At the hearing on appellant's motion for new trial, appellant's new attorney raised
ineffective assistance of counsel issues which are also the subject of this appeal. Appellant, Heaston,
appellant's trial attorney and the prosecuting attorney all testified at the hearing. The district court
overruled the motion for new trial.


Discussion


 Appellant contends that the evidence is legally and factually insufficient to support
the court's finding that the knife appellant held against Heaston's throat was a deadly weapon. 
Appellant also contends that the trial court erred in overruling her motion for new trial because
testimony relating to her threat to Susan Roller admitted during the punishment phase was obtained
illegally and, therefore, its admission violated Texas Code of Criminal Procedure article 38.23. See
Tex. Code Crim. Proc. Ann. art. 38.23 (West Supp. 2001). Additionally, appellant contends that she
received ineffective assistance of counsel because her attorney failed to object to the admission of
the illegally obtained evidence. Finally, appellant contends that the district court erred in overruling
the motion for new trial because she received ineffective assistance of counsel during the plea
bargaining process and she was not properly informed about the consequences of a deadly weapon
finding. We will address each of these issues in turn.


Deadly Weapon Finding

 In her first two issues appellant contends that the evidence is legally and factually
insufficient to support the district court's finding that the knife appellant held against Heaston's
throat was a deadly weapon. 

 The test for legal sufficiency is whether, after viewing all the evidence in the light
most favorable to the verdict, any rational trier of fact could have found the essential elements
beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 324 (1979); Griffin v. State, 614
S.W.2d 155, 158-59 (Tex. Crim. App. 1981). When conducting a factual sufficiency review, all the
evidence is considered equally, including the testimony of defense witnesses and the existence of
alternative hypotheses. See Orona v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). 
A factual sufficiency review asks whether a neutral review of all the evidence, both for and against
the finding, demonstrates that the finding is so obviously weak or greatly outweighed by contrary
proof as to undermine the trier of fact's determination. See Johnson v. State, 23 S.W.3d 1, 11-12
(Tex. Crim. App. 2000). The finding may be set aside only if it is clearly wrong and unjust. Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). 

 An instrument is a "deadly weapon" if it is: 

(A) a firearm or anything manifestly designed, made or adapted for the purpose of
inflicting death or serious bodily injury or 


(B) anything that in the manner of its use or intended use is capable of causing
death or serious bodily injury. 



Tex. Pen. Code Ann. § 1.07(a)(17) (West 1994). 

 The knife appellant held against Heaston's neck was not manifestly designed to cause
serious bodily injury, therefore, it was not per se a deadly weapon. Davidson v. State, 602 S.W.2d
272, 273 (Tex. Crim. App. 1980); Victor v. State, 874 S.W.2d 748, 751 (Tex. App.--Houston [1st
Dist.] 1994, pet. denied). When, as in this case, there was not a death or any serious bodily injury,
the State must show that the knife was (1) capable of causing serious bodily injury and (2) that it was
displayed or used in a manner that established the intent to use the knife to cause death or serious
bodily injury. Lockett v. State, 874 S.W.2d 810, 814 (Tex. App.--Dallas 1994, pet. ref'd). 

 Factors that may be considered in determining whether a knife is a deadly weapon
are the manner of its use, its size and shape, and its capacity to produce death or serious bodily
injury. Davidson, 602 S.W.2d at 273. Additionally, the physical proximity between the victim and
the knife may be considered. Tisdale v. State, 686 S.W.2d 110, 115 (Tex. Crim. App. 1984). Also,
any threats or words used by the defendant may be considered by the finder of fact to determine
whether the knife is a deadly weapon. Blain v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). 
No one factor is determinative and the evidence presented in each case must be examined to
determine whether the finder of fact could have concluded from the surrounding circumstances that
the knife used was a deadly weapon. Brown v. State, 717 S.W.2d 939, 947 (Tex. Crim. App. 1986). 


 In this case, appellant repeatedly held Heaston against her will while holding the
knife. During the incident, appellant was very angry and several times she yelled obscenities at
Heaston while holding the knife against her throat. Initially, she grabbed Heaston around the neck
with her left arm and displayed the knife in her right hand and forced Heaston to move from room
to room in the house. Later, she again grabbed Heaston around the neck and held the knife close to 
her throat. Appellant then forced Heaston outside while holding the knife next to Heaston's throat. 
Heaston testified that she feared serious bodily injury or death from appellant repeatedly holding the
knife against her throat while appellant was in an agitated state. 

 There was no testimony about the length of the knife but it was admitted as evidence (2)
and the district court had the opportunity to handle the knife and evaluate its capabilities. The only
reference to the sharpness of the knife was appellant's testimony that it was not sharp. Appellant
contended that, as the handle was broken, most of the blade was inside her grasp and so only a small
portion of the blade actually protruded from her hand. Officer Canizales testified that based on his
experience, the knife was capable of inflicting serious bodily injury or death. Appellant testified that
she did not intend to harm Heaston. 

 Even if a defendant did not intend to use deadly force, an object can nevertheless be
a deadly weapon if a defendant used the knife in a manner in which it would have been capable of
causing death or serious bodily injury. See McCain v. State, 22 S.W.3d 497, 503 (Tex. Crim. App.
2000). Consequently, appellant's lack of actual intent to cause serious bodily injury does not
conclusively establish that the knife was not a deadly weapon. Heaston testified that she feared that
the knife could cause her serious bodily injury or death. Although appellant did not threaten Heaston
with harm verbally, and, even assuming appellant did not actually intend to harm Heaston, a trier of
fact could reasonably have determined that appellant's actions of holding the knife against Heaston's
throat together with her agitated demeanor, her erratic behavior, and her statements to Heaston
suggested that she displayed or used the knife in a manner that established the intent to use the knife
to cause serious bodily injury or death. 

 Viewing the evidence in the light most favorable to the finding, we hold that a
rational trier of fact could have found beyond a reasonable doubt that the knife was a deadly weapon.
Additionally, we hold that the evidence supporting the deadly weapon finding is not so weak as to
render the finding clearly wrong or manifestly unjust. The evidence is legally and factually sufficient
to support the district court's finding that appellant used a deadly weapon. Appellant's first and
second issues are overruled.


Susan Roller's Testimony

 In her third issue, appellant contends that the State wrongfully obtained information 
about appellant's threat to Susan Roller, appellant's former therapist and, therefore, pursuant to
article 38.23 of the Texas Code of Criminal Procedure, Roller's testimony was improperly admitted
at trial. Tex. Code Crim. Proc. Ann. art. 38.23 (West Supp. 2001) (Texas exclusionary rule). 
Appellant contends that the State wrongfully discovered the incident involving appellant and Roller
through Heaston's written statement to police in which Heaston stated that appellant told her before
attacking her that she previously had threatened Roller with a knife. Appellant contends that because
she never gave Heaston consent to disclose the incident with Roller, Heaston violated section
611.002 of the Health and Safety Code, a statutory confidentiality provision, the State wrongfully
discovered the information through Heaston's statement, and therefore, Roller's testimony was
improperly admitted at trial. See Tex. Health & Safety Code Ann. § 611.002 (West Supp. 2001). 
Appellant did not raise this objection at trial. 

 The Texas exclusionary rule provides,

No evidence obtained by an officer or other person in violation of any provisions of
the Constitution or laws of the State of Texas, or of the Constitution or laws of the
United States of America, shall be admitted in evidence against the accused on the
trial of any criminal case. 



Tex. Code Crim. Proc. Ann. art. 38.23(a) (emphasis added). The exclusionary rule may not be
invoked for statutory violations unrelated to its purpose. See Watson v. State, 10 S.W.3d 782, 784
(Tex. App.--Austin 2000, no pet.). The stated purpose of the exclusionary rule is to deter police
activity that could not have been reasonably believed to be lawful by officers engaging in the
activity. See Drago v. State, 553 S.W.2d 375, 378 (Tex. Crim. App. 1977). This Court has stated
that a more accurate expression of article 38.23's "primary purpose . . . is to deter unlawful actions
which violate the rights of criminal suspects." Watson, 10 S.W.3d at 784 (citing Carroll v. State,
911 S.W.2d 210, 211 (Tex. App.--Austin 1995, no pet.)). To "obtain" means to gain or attain by
planned action or effort. State v. Daugherty, 931 S.W.2d 268, 270-71 (Tex. Crim. App. 1996);
Carroll v. State, 911 S.W.2d 210, 220 (Tex. App.--Austin 1995, no pet.) (citing Black's Law
Dictionary 1078 (6th Ed. 1990)). 

 Here, the police did not actively procure or obtain the information about Roller from
Heaston. Further, in July 1990, at the time appellant threatened Roller, Roller notified the police,
filed a police report, and the police conducted an investigation. Although Roller did not press
charges against appellant, the police had in their possession information regarding appellant's
incident with Roller before Heaston ever made her statement. The police did not violate article
38.23 in obtaining information about appellant's incident with Roller. Appellant's third issue is
overruled. 

 Because we have overruled appellant's contention that Roller's testimony was
admitted wrongly, we also overrule appellant's fourth issue contending that trial counsel was
ineffective for failing to object to the testimony. 


Claim of Ineffective Assistance of Counsel Related to the Effects of a Deadly Weapon Finding

 In her fifth and sixth issues, appellant contends that she received ineffective assistance
of counsel because her trial attorney failed to explain that if she elected to go to trial before the court
and if the judge found that she used deadly weapon, she would be ineligible for probation and
ineligible for parole for a mandatory time period. See Tex. Code Crim. Proc. Ann. art. 42.12,
§ 3G(a)(2) (West Supp. 2001); Tex. Gov't Code Ann. § 508.145(d) (West 1998). She contends that
if she had fully understood the consequences of the judge making a deadly weapon finding, she
would have elected a jury trial. Additionally, she contends she would have accepted a plea bargain
for jail time. All of these issues were raised for the first time in appellant's motion for new trial. 
Following an evidentiary hearing during which appellant, appellant's trial attorney and the
prosecutor testified about these issues, the district court overruled the motion. (3) 

 The granting or overruling of a motion for new trial lies within the discretion of the
trial court. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). Accordingly, the trial judge is
the sole judge of the credibility of the witnesses. Id. If there is conflicting evidence, and the
resolution of the conflict depends upon the credibility of witnesses and their testimony, the trial
judge determines the issue and there is no abuse of discretion in overruling the motion for new trial. 
Id. 

 To prevail on an ineffective assistance of counsel contention, a defendant bears the
burden of showing (1) deficient performance and (2) prejudice. Strickland v. Washington, 466 U.S.
668, 687 (1984); Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To prove
deficiency, a defendant must demonstrate that counsel's performance fell below an objective
standard of reasonableness or deviated from prevailing professional norms. Strickland, 466 U.S. at
688. Judicial scrutiny of counsel's performance should be highly deferential. Strickland, 466 U.S.
at 689. Counsel's performance is not evaluated in hindsight, but from counsel's perspective at the
time of the proceeding. Id. A defendant must overcome a strong presumption that an attorney's
actions were sound trial strategy. Id.; Jackson, 877 S.W.2d at 771. A defense counsel's trial strategy
should not be second-guessed, nor will the fact that another attorney might have pursued a different
course support a determination that counsel was ineffective. Jackson, 877 S.W.2d at 771; Delrio
v. State, 840 S.W.2d 443 (Tex. Crim. App. 1992); Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim.
App. 1979). We review the totality of the representation, rather than isolated acts or omissions. 
Wilkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). 

 At the hearing, appellant testified that she did not learn about the State's deadly
weapon allegation until after trial commenced. Appellant's trial attorney testified that although he
did not send appellant a copy of the State's written notice raising the deadly weapon issue, he
informed her about the issue and discussed with her the various aspects of the deadly weapon issue

before she waived a jury trial. According to him, he specifically told her before she waived a jury
trial that if she elected to go to trial before the court and if the judge found she used a deadly weapon
she would be ineligible for probation and would have to serve a mandatory minimum portion of any
prison sentence assessed. At the hearing, appellant's attorney explained the plea negotiations:

 

Q: Did you engage in plea negotiations with the State of Texas?


A: When I was first appointed to the case, I believed that she was not--that we
should be able to settle this on some kind of misdemeanor sentencing, send her
to jail for a year or something. I just couldn't believe that the facts warranted
that. And I think I communicated that to her. 


 Mr. Bishop was so adamant that he was not--not only did he not want a
misdemeanor, but he wouldn't grant a probation. And so that--when it became
clear that a misdemeanor was not available and that the only way that we could
get probation was to go to trial, I did communicate that to Ms. Williams and I
never got a specific number of years from Mr. Bishop because the issue was
whether or not she, you know, she wanted probation. And I thought she
deserved probation, quite frankly. 



Appellant's counsel further testified about his trial strategy during the following exchange:

 

Q: Did you advise her to take this case to trial on a plea of not guilty?


A: It was my advice that she should try it in front of a judge rather than a jury
because the jury was unpredictable and that I thought the judge was more
reasonable. And it was my opinion that the judge would not find that rusted
blade a deadly weapon, but, you know.


Q: You told her that before she waived the jury?


A: Yes.


During cross-examination, appellant's trial attorney stated that in looking back, he was not sure if
appellant understood all of the consequences of a deadly weapon finding by a trial judge. 

 The foregoing reflects that appellant's trial attorney believed the case warranted probation
or, at most, a minimal prison sentence. His impression was that appellant wanted only probation and
did not want to serve any prison time. The State made it clear to him during plea negotiations that
it would not consider offering a plea bargain that included probation. Despite appellant's attorney's
testimony that, in hindsight he questioned appellant's understanding of all of the consequences of
a deadly weapon finding by the judge, we evaluate appellant's trial attorney's performance from his
perspective at the time of the plea-bargain process. Considering the positions of the parties,
apparently appellant's trial attorney believed at the time that the only chance to obtain probation was
to suggest to appellant that she go to trial before the court and that perhaps the judge would find the
knife she used was not a deadly weapon and would then assess a probated prison sentence. Further,
while there was conflicting testimony about when appellant's attorney informed appellant about the
deadly weapon finding, we must defer to the trial court's credibility determination that appellant was
informed about the consequences of a deadly weapon finding before she waived a jury trial. See
Quinn v. State, 958 S.W.2d 395, 401-02 (Tex. Crim. App. 1997); Valdez v. State, 893 S.W.2d 721,
724 (Tex. App.--Austin 1995, pet. ref'd). Given the positions taken by the parties prior to trial,
appellant has not overcome the strong presumption that her attorney's actions were sound trial
strategy. We hold that appellant has not shown that her trial attorney's performance fell below an
objective standard of reasonableness. Appellant's fifth and sixth issues are overruled. The judgment
is affirmed.



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: November 29, 2001

Do Not Publish
1.   Williams is not related to appellant.
2.   While the actual knife appellant used in committing the offense was admitted at trial, the
appellate record contains only a photograph of the knife. Appellant has filed a motion requesting
that the actual knife be submitted as a supplemental record for this Court's review. We note that as
the trial was to the court, the trial judge, as the finder of fact, reviewed the knife. On appeal we
allow deference to the finder of fact regarding a determination that a knife is a deadly weapon. We
overrule appellant's motion requesting that the actual knife be submitted to this Court as a
supplemental record.
3.   There is no issue raised on appeal that appellant's trial counsel was ineffective because he failed
to raise insanity as a defense or because he failed to challenge appellant's competency to stand trial.
The record reflects that during the punishment hearing, appellant introduced exhibit three, a
psychiatrist's report, in which the psychiatrist stated that after evaluating appellant it was his belief
that she was not insane at the time she committed the offense. Additionally, the only reference to
appellant's competency to stand trial occurred at the hearing on the motion for new trial when the
trial judge stated, "The Court is going to take judicial notice of the findings by [the psychiatrist] in
this case, that [appellant] was competent to stand trial and she understood the charges against her
and could communicate with her lawyer." We do not address these issues as they are not before us
for review.