COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-305-CR
 
  
LEE 
WAYNE LAWRENCE                                                        APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 30TH DISTRICT COURT OF WICHITA COUNTY
 
------------
 
OPINION
 
------------
 
I. Introduction
        Appellant 
Lee Wayne Lawrence appeals his convictions for possession of a prohibited weapon 
and two counts of aggravated assault. After a jury found Lawrence guilty on all 
counts, the trial court assessed his punishment at twenty-five years’ 
confinement on the possession of a prohibited weapon count and forty years’ 
confinement, to be served concurrently, on each of the aggravated assault 
counts. In two points, Lawrence contends that (1) Texas Code of Criminal 
Procedure 46B.004 applies to him and required the trial court on its own motion 
to conduct a competency inquiry and (2) the evidence is legally and factually 
insufficient to establish that the PVC pipe bomb Lawrence possessed was an 
explosive weapon designed, made, or adapted for the purpose of inflicting bodily 
injury, death, or substantial property damage. We will affirm.
II. Factual 
Background
        On 
December 7, 2002, Lawrence dressed in full military fatigues and went to a 
gentleman’s club where his daughter was working. He brandished a Bowie knife 
with a nine-inch blade and threatened to blow up the club with a pipe bomb he 
wore on a chain around his neck. Lawrence eventually surrendered to the police 
after he poured out the contents of the PVC pipe bomb—rusted nails, screws, 
shotgun shot, and shotgun powder.
III. Competency 
To Stand Trial
        In 
his first point, Lawrence argues that article 46B of the code of criminal 
procedure governs the determination of whether he was competent to stand trial, 
not former article 46.02, and that the trial court failed to comply with the 
requisites of article 46B by failing to sua sponte conduct an informal 
inquiry into his competency. Tex. Code 
Crim. Proc. Ann. art. 46B (Vernon Supp. 2004-05). The State argues that 
former article 46.02 applies to the determination of whether Lawrence was 
competent. Effective January 1, 2004, the legislature repealed code of criminal 
procedure article 46.02 and replaced it with article 46B. See Act of 
April 30, 2003, 78th Leg., R.S., Ch. 35, §§ 15-17, 2003 Tex. Gen. Laws 57, 72 (current version 
at Tex. Code Crim. Proc. Ann. art. 
46B (Vernon Supp. 2004-05)). Section 16 of the Act of April 30, 2003 provides,
   
The change in law made by this Act applies only to a defendant against whom 
proceedings have not been initiated under Article 46.02, Code of Criminal 
Procedure, before the effective date of this Act.  The determination of 
incompetency for a defendant against whom proceedings have been initiated under 
Article 46.02, Code of Criminal Procedure, before the effective date of this Act 
is covered by the law in effect when the proceedings were initiated, and the 
former law is continued in effect for this purpose.
 
  
Id.  
The State contends that proceedings were initiated against Lawrence when the 
indictment charging him was filed, that is, on August 6, 2003.  The 
“proceedings” referenced by the legislature in section 16 of the Act, 
however, are specifically identified as competency proceedings—“proceedings 
. . . under Article 46.02”—not criminal proceedings generally.  Id.  
Because no competency proceedings were initiated in this case prior to January 
1, 2004, we hold that article 46B of the code of criminal procedure applies to 
Lawrence.  See Richardson v. State, No. 01-04-00281-CR, 2005 WL 
267708, at *1-2 (Tex. App.—Houston [1st Dist.] Feb. 3, 2005, no pet.) (mem. 
op.) (applying Chapter 46B to case in which court inquired into appellant’s 
competence before accepting his guilty plea at hearing held on January 26, 
2004).  But see Myers v. State, No. 06-04-00033-CR, 2004 WL 2214081, 
*1 n.1 (Tex. App.—Texarkana Oct. 5, 2004, no pet.) (mem. op.) (applying 
repealed article 46.02 because “the proceedings were originally initiated in 
this matter by the filing of the indictment” but noting that both parties 
agreed that article 46.02 applied).
        We 
review a trial court’s decision not to conduct a competency hearing for an 
abuse of discretion. See Moore v. State, 999 S.W.2d 385, 393 (Tex. Crim. 
App. 1999), cert. denied, 530 U.S. 1216 (2000).  A trial court 
abuses its discretion if its decision is arbitrary or unreasonable.  Lewis 
v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).
        Article 
46B.004 is titled “Raising Issue of Incompetency to Stand Trial” and 
provides,
   
(a) Either party may suggest by motion, or the trial court may suggest on its 
own motion, that the defendant may be incompetent to stand trial. A motion 
suggesting that the defendant may be incompetent to stand trial may be supported 
by affidavits setting out the facts on which the suggestion is made.
 
(b) 
If evidence suggesting the defendant may be incompetent to stand trial comes to 
the attention of the court, the court on its own motion shall suggest that the 
defendant may be incompetent to stand trial.
 
(c) 
On suggestion that the defendant may be incompetent to stand trial, the court 
shall determine by informal inquiry whether there is some evidence from any 
source that would support a finding that the defendant may be incompetent to 
stand trial.
 
(d) 
If the court determines there is evidence to support a finding of incompetency, 
the court, except as provided by Article 46B.005(d), shall stay all other 
proceedings in the case.
 
 
Tex. Code Crim. Proc. Ann. art. 
46B.004.  If, under subsection (b), evidence comes to the trial court’s 
attention suggesting that the defendant may be incompetent to stand trial, then, 
under subsection (c), the trial court is required to determine by informal 
inquiry whether there is some evidence that would support a finding that the 
defendant may be incompetent to stand trial.  Id.
        A 
person is incompetent to stand trial if he does not have sufficient present 
ability to consult with his lawyer with a reasonable degree of rational 
understanding or a rational, as well as factual, understanding of the 
proceedings against him.  Id. art. 46B.003(a).  If, after an 
informal inquiry, the court determines that evidence exists to support a finding 
of incompetency, the court shall order an examination to determine whether the 
defendant is incompetent to stand trial.  Id. art. 46B.005(a).  
Furthermore, generally, if the court determines that evidence exists to support 
a finding of incompetency, the court shall hold a hearing before determining 
whether the defendant is incompetent to stand trial, and, on the request of 
either party or on the court’s motion, a jury shall make the determination as 
to whether the defendant is incompetent.  Id. arts. 46B.005(b), 
46B.051.
        Lawrence 
claims that evidence suggesting he might be incompetent to stand trial came to 
the trial court’s attention during the pretrial, the guilt-innocence, and the 
punishment portions of trial. He argues that his statements and testimony 
displayed a pattern of rambling speech, confused thoughts, and incomprehensible 
answers of a most bizarre quality.  We have thoroughly reviewed the record, 
and it does demonstrate that Lawrence provided rambling and often nonresponsive 
answers to questions that he was asked. But most of Lawrence’s testimony and 
his answers to counsels’ questions reveal that he simply wanted his day in 
court and wanted an opportunity to tell his story his way.  His lengthy 
answers to direct questions from counsel demonstrate his penchant for describing 
the details of the offenses and the details of his thoughts during and after the 
offenses for which he was charged and convicted.  Lawrence’s testimony 
shows not that he could not consult with his attorney or that he lacked a 
rational and factual understanding of the proceedings against him, but simply 
that he cared deeply about his daughter’s welfare and was willing to implement 
a dramatic plan in an effort to “save her.”  Though his plan for saving 
his daughter was unusual and unlawful, it does not demonstrate incompetence as 
that term is defined.  See id. art. 46B.003(a); see also Luke v. 
State, No. 07-02-00397-CR, 2003 WL 21981940, at *4 (Tex. App.—Amarillo 
Aug. 19, 2003, no pet.) (mem. op.).  Cf. Clark v. State, 47 S.W.3d 
211, 218 (Tex. App.—Beaumont 2001, no pet.) (appellant’s conduct at pretrial 
hearing was bizarre; he kept repeating that he wanted to go to Skyview 
psychiatric unit and said that he had no case pending and no attorney).  
Because nothing in the record raised the issue of Lawrence’s ability to 
consult with his counsel or his ability to understand the proceedings and the 
charges against him at anytime during the proceedings, we hold that the evidence 
presented during the pretrial, the guilt-innocence, and the punishment portions 
of the trial was insufficient to suggest that Lawrence was incompetent to stand 
trial.  See Tex. Code Crim. 
Proc. Ann. arts. 46B.003(a), 46B.004(c).
        In 
Richardson, the Houston First Court of Appeals held that “the 
requirement concerning a trial judge’s duty to conduct an informal competency 
inquiry in Chapter 46B is substantively similar to the requirement set forth in 
former article 46.02.”  2005 WL 267708, at *2 n.3.  Accordingly, the 
Houston court applied the “raises a bona fide doubt . . . about the 
defendant’s competency” case law to determine whether evidence “suggesting 
incompetency” came to the trial court’s attention under article 
46B.004(b).  Id.  Lawrence argues that article 46B.004(b)’s 
“evidence suggesting” incompetency language creates a new, lower evidentiary 
threshold for trial courts in determining the necessity of an informal inquiry 
concerning competency.  We do not address this issue because even giving 
article 46B.004(b)’s “evidence suggesting” language a broad 
interpretation, no evidence of “incompetency,” as that term is statutorily 
defined, exists in the record before us.
        If 
Lawrence’s rambling, nonresponsive testimony could be construed as “evidence 
suggesting” incompetency, the record reveals that the trial court conducted 
the statutorily mandated “informal inquiry” immediately prior to trial:
  
THE COURT: This is Cause No. 40,339-A, The State of Texas vs. Lee Wayne 
Lawrence.  The matter is set for jury trial in just a few minutes.  I 
do need to do an arraignment and also determine any remaining pretrial issues.
  
Sir, 
is your name Lee Wayne Lawrence?
  
THE 
DEFENDANT: Yes, Your Honor.
  
THE 
COURT: Mr. Lawrence, you’re before the Court today; you’re charged in this 
case by grand jury indictment with the offense of possession of a prohibited 
weapon and aggravated assault, two counts.  Also there are two enhancement 
paragraphs in the indictment.
  
In 
the indictment your name is set out as Lee, L-e-e, Wayne, W-a-y-n-e, Lawrence, 
L-a-w-r-e-n-c-e.  Is that your correct name?
  
THE 
DEFENDANT: Yes.
  
THE 
COURT: Is it spelled correctly?
  
THE 
DEFENDANT: Yes.
  
THE 
COURT: Mr. Lawrence, have you ever been hospitalized for any mental disease or 
defect or treated by a psychiatrist?
  
THE 
DEFENDANT: I’ve been treated for depression.
  
THE 
COURT: By a psychiatrist?
  
THE 
DEFENDANT: Yes.
  
THE 
COURT: Have you told your attorney so he can advise you as to whether that has 
any affect on this morning’s proceedings?
  
THE 
DEFENDANT: Yes.
  
THE 
COURT: Okay.  Now, while this case has been pending against you have you 
always understood the nature of these charges.
  
THE 
DEFENDANT: No, sir.  I’ve had three different lawyers on my case, and 
I’ve never met this man before.
  
THE 
COURT: Okay.  We’re going to take that up in a minute.  I’m just 
asking about the charges themselves.  Have you understood what you’re 
charged with?  Not necessarily why you’re charged, and I’m not asking 
you certainly if you agree with it.  But do you understand the charges that 
you’re facing, possession of a prohibited weapon and the two counts of 
aggravated assault?
  
THE 
DEFENDANT: Yes, sir.
  
THE 
COURT: Okay.  And in talking with your attorneys -- I’m not asking 
whether you agree with your attorneys at this time, but in talking with your 
attorneys have you understood those conversations?
  
THE 
DEFENDANT: No, sir, not -- I sure haven’t because I’ve been told that 
there’s going to be witnesses gonna appear for the defense all the way up 
until yesterday and then yesterday whoever I talked to that said they was the 
lawyer on the phone told me that no, that I didn’t have none.  And I just 
got through asking my attorney back there.  I said, well, what about those 
ones that the investigator talked to that said that they was gonna 
testify?  How come they’re not here?  And he said, well, we can’t 
find nobody.
  
THE 
COURT: But did you understand those conversations?  Again, I’m not asking 
you if you agree with that, but did you understand what they’re telling you?
 
THE 
DEFENDANT: Well, not really because the investigator was telling me one thing 
about all of the testimony that’s gonna go for me.  And then whoever I 
was talking to that said that they was my lawyer on the phone, I would talk to 
them later and he’d tell me something else that was contrary.  And so it 
went back and forth, and I don’t -- I don’t -- I really don’t understand 
what’s happening.
  
THE 
COURT: Have you been able to explain to your attorney your side of the case?
 
THE 
DEFENDANT: I’ve never really talked to him about it, but I’ve talked to the 
investigator about it.  And he’s the only one that I’ve really talked 
to about the case.
  
THE 
COURT: But have you been able to explain that to the folks in your attorney’s 
office?
  
THE 
DEFENDANT: Well, whoever I was talking to on the phone that said they was my 
attorney, every time I tried to explain what happened I was told that it was 
irrelevant.
  
THE 
COURT: Mr. Curry, do you believe that your client is presently competent to 
stand trial?
  
[DEFENSE 
COUNSEL]: Your Honor, we had an ex parte evaluation of Mr. Lawrence done in the 
summer of last year, and the finding in that was that he was competent to stand 
trial.  In my conversations with him, although we disagreed about matters, 
I think he’s understood what I’ve said.  He’s been able to relate to 
me appropriate questions with regards to his situation.  So, I mean, I 
can’t speak to what’s in his -- going on with him right at this moment, but 
I have not had a question about his competency up to this point.
  
THE 
COURT: Okay.  What are your opinions as we sit here this morning?
 
[DEFENSE 
COUNSEL]: In any conversation with him on the phone yesterday and in 
conversation with him this morning I still -- there’s been nothing said to me 
that based on my experience would suggest that he’s not competent.
  
 
The 
trial court then took up the State’s motion in limine, followed at length by 
testimony from Lawrence on his request for new counsel, which the trial court 
denied.  With regard to Lawrence’s request to find witnesses, the trial 
court allowed time for the defense to draft a motion for continuance, which was 
granted.
        After 
reviewing the entire record from the pretrial hearing, the guilt-innocence 
phase, and the punishment phase of trial, we cannot say that the trial court 
abused its discretion by failing to conduct further inquiry into Lawrence’s 
competency. See Donnell v. State, 148 S.W.3d 674, 676 (Tex. 
App.—Beaumont 2004, no pet.).  The trial court’s informal inquiry set 
forth above established that Lawrence was not suffering from recent severe 
mental illness or moderate retardation, that he understood the charges that he 
was facing, that he had been able to communicate in a meaningful way with his 
attorneys, that an ex parte evaluation had found him competent to stand trial, 
and that his own counsel had no question about his competence to stand 
trial.  Although Lawrence’s appellate counsel urged during oral argument 
that the trial court should have had additional dialog beyond just whether 
Lawrence understood the charges against him and could communicate meaningfully 
with his attorney, we cannot agree.  The informal competence inquiry 
conducted by the trial court satisfied Chapter 46B.  Although the trial 
court certainly could have conducted a more detailed inquiry,[1] 
the inquiry it did conduct was not so deficient that it constituted an abuse of 
discretion.  See Lewis, 911 S.W.2d at 7.
        We 
overrule Lawrence’s first point.
IV. Legally and 
Factually Sufficient Evidence of
Explosive 
Weapon’s Capabilities
 
        In 
his second point, Lawrence argues that the evidence is legally and factually 
insufficient to establish that the “explosive weapon” he was charged with 
possessing—the pipe bomb worn around his neck—was designed, made, or adapted 
for the purpose of inflicting bodily injury, death, or substantial property 
damage.  The State contends that the testimony of their expert witness and 
of Lawrence himself proved that the device was capable of causing an explosion 
that would cause serious bodily injury.
        A.     Legal 
Sufficiency Standard
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004).
        This 
standard gives full play to the responsibility of the trier of fact to resolve 
conflicts in the testimony, to weigh the evidence, and to draw reasonable 
inferences from basic facts to ultimate facts. Jackson, 443 U.S. at 319, 
99 S. Ct. at 2789. The trier of fact is the sole judge of the weight and 
credibility of the evidence. See Tex. 
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when performing a legal 
sufficiency review, we may not re-evaluate the weight and credibility of the 
evidence and substitute our judgment for that of the fact finder. Dewberry v. 
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000). We must resolve any inconsistencies in the evidence in favor 
of the verdict. Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 
2000).
        B.     Factual 
Sufficiency Standard
        In 
reviewing the factual sufficiency of the evidence to support a conviction, we 
are to view all the evidence in a neutral light, favoring neither party. See 
Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only 
question to be answered in a factual sufficiency review is whether, considering 
the evidence in a neutral light, the fact finder was rationally justified in 
finding guilt beyond a reasonable doubt.  Id. at 484.  There 
are two ways evidence may be factually insufficient: (1) the evidence supporting 
the verdict or judgment, considered by itself, is too weak to support the 
finding of guilt beyond a reasonable doubt; or (2) when there is evidence both 
supporting and contradicting the verdict or judgment, weighing all of the 
evidence, the contrary evidence is so strong that guilt cannot be proven beyond 
a reasonable doubt.  Id. at 484-85.  “This standard 
acknowledges that evidence of guilt can ‘preponderate’ in favor of 
conviction but still be insufficient to prove the elements of the crime beyond a 
reasonable doubt.”  Id. at 485.  In other words, evidence 
supporting a guilty finding can outweigh the contrary proof but still be 
insufficient to prove the elements of an offense beyond a reasonable 
doubt.  Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses.  Id. at 481; Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment 
for that of the fact finder’s.  Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the 
evidence.  Id. at 484, 486-87.  An opinion addressing factual 
sufficiency must include a discussion of the most important and relevant 
evidence that supports the appellant’s complaint on appeal.  Sims v. 
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
        C.     Analysis
        Texas 
Penal Code section 46.01(2) defines “explosive weapon” as “any explosive 
or incendiary bomb, grenade, rocket, or mine, that is designed, made, or adapted 
for the purpose of inflicting serious bodily injury, death, or substantial 
property damage.” Tex. Penal Code Ann. 
§ 46.01(2) (Vernon 2003).
        Here, 
the record demonstrates that the State’s expert testified as follows:
  
[PROSECUTOR:] Now, from that sample of what you collected from State’s 
[Exhibit No.] 14, did you have an opportunity to test that and see if it was 
capable of causing an explosion?
  
[DR. 
JOHN RHOADS:[2]] I did.
  
Q. 
And what was your result of that test?
  
A. 
The material -- the powder that was separated from the shot did explode.
  
Q. 
Now, have you also had an opportunity to see this piece of PVC pipe that’s 
been admitted as State’s Exhibit No. 5?
  
A. 
I did.
  
Q. 
And based on the tests that you performed on the sample that you took and your 
knowledge, your training, and your experience in the field of physics, do you 
have an opinion as to whether this PVC pipe, if it was filed [sic] with the 
substance that you tested and capped with a primer from a shotgun shell on the 
top, whether that was capable of causing an explosion?
  
A. 
In my opinion it would have, yes.
  
Q. 
Doctor Rhoads, we hear a lot about pipe bombs and how people make homemade pipe 
bombs.  What is it about a pipe joint that makes it conducive as a homemade 
bomb?
  
A. 
The device needs to contain the expanding gases to propel material and the 
device.
  
Q. 
All right. Now, if this device, State’s [Exhibit No.] 5, was filled with the 
screws and the nails, the shotgun shot and the powder that are shown in 
State’s Exhibit No. 3, and if that had been exploded, in your opinion would 
that have hurled the nails and screws outside at a pretty high velocity?
  
A. 
In my opinion it would, yes.
  
Q. 
Would it have placed anybody in the near proximity in danger?
 
A. 
I would not want to have been in the room.
    
        Witnesses 
testified that Lawrence threatened to blow up the building. The disk jockey from 
the club testified that Lawrence held a lit cigar over the top of the pipe bomb 
and asked if the disk jockey was “ready to f---ing die.”  Officer Beggs 
testified that “[w]hat this gentleman had in his bomb would have hurt somebody 
severely with the fragmentation and just the pressure in the pipe 
itself.”  Based on his training, Officer Beggs had no doubt in his mind 
that the PVC pipe bomb, as it was constructed with the primer on the end and the 
gunpowder and shotgun shot inside, was an explosive weapon.  Lawrence 
himself testified concerning the explosive attributes of and the potential harm 
that could result from the pipe bomb:
  
If I did get a chance to set that thing off all it’s gonna do is that shell 
deal on the top . . . would . . . shoot out. I mean, it would pop straight up 
because when the -- when the shell goes off it’s gonna shoot down.  And 
because the deal is loose, it’s just gonna fly up like that (indicating) and 
whatever’s in the pipe is gonna just try to fly out the top of it because it 
has nothing to control the perimeter to cause the pipe to explode.  I mean, 
that’s common physics.
  
. 
. . .
  
Only 
thing that’s gonna happen with that piece of pipe if I was to be able to set 
that thing off is that dad-gum thing is gonna fly up there to the ceiling and 
then whatever is inside that pipe and just gonna fly up in your face and then 
you’re gonna look pretty bad the rest of your life wherever you’re at, in 
prison or wherever.  You’re not gonna die. . . . I mean, you’re not 
gonna want to maim yourself.
 
 
        The 
important and relevant evidence supporting Lawrence’s factual sufficiency 
complaint was provided by Lawrence. Lawrence repeatedly told the jury that he 
was merely trying to get a point across and that he was not trying to blow up 
the building.  He explained that he had to make the pipe bomb look 
legitimate and menacing and that he threatened to light it with the cigar to 
make the people in the club think he was serious.  He said that he really 
did not want anybody to get hurt.
        Viewing 
the evidence in the light most favorable to the verdict, we hold that a rational 
trier of fact could have found the pipe bomb to be an “explosive weapon” 
that was designed, made, or adapted for the purpose of inflicting serious bodily 
injury, death, or substantial property damage. See Jackson, 443 U.S. at 
319, 99 S. Ct. at 2789. Furthermore, viewing all the evidence in a neutral 
light, favoring neither party, we also conclude that the evidence supporting the 
verdict, taken alone, is not too weak to support the finding of guilt beyond a 
reasonable doubt and that the contrary evidence is not so strong that guilt 
cannot be proven beyond a reasonable doubt. Dotson v. State, 146 S.W.3d 
285, 295 (Tex. App.—Fort Worth 2004, pet. ref’d). Accordingly, we hold that 
the evidence is both legally and factually sufficient to support Lawrence’s 
conviction for possession of an explosive weapon. See McWilliams v. State, 
No. 13-97-00830-CR, 1999 WL 33757429, at *3 (Tex. App.—Corpus Christi Apr. 22, 
1999, no pet.) (not designated for publication) (holding evidence legally and 
factually sufficient to establish elements of possession of an explosive weapon 
beyond a reasonable doubt). We overrule Lawrence’s second point.
V. Conclusion
        Having 
overruled each of Lawrence’s two points, we affirm the trial court’s 
judgment.
  
                                                          SUE 
WALKER
                                                          JUSTICE


PANEL 
A:   LIVINGSTON, DAUPHINOT, and WALKER, JJ.

PUBLISH

DELIVERED: 
June 9, 2005


NOTES
1.  
During oral argument, Lawrence’s counsel argued that the trial court should be 
required to make a finding of competence on the record and that an adequate 
informal inquiry into a defendant’s competence should include questioning 
jailers about the defendant’s behavior while in jail, questioning the 
defendant’s family members about the defendant’s mental status, conducting 
an en camera review of any ex parte psychological evaluations of the 
defendant, and even asking the defendant what offense he is charged with to test 
his understanding of the proceedings against him.  Although we decline to 
hold that these inquiries by the trial court are required in an informal 
inquiry, they do constitute useful, nonexclusive sources of information 
available to the trial court in making such an inquiry.
2.  
Dr. Rhoads is a professor of physics at Midwestern State University.  He 
received his PhD from Oklahoma State University after completing his 
dissertation on the radiation defects introduced by electronics on solid 
material.  Lawrence did not object to Dr. Rhoads’s testimony or his 
qualifications during the trial.