Opinion filed June 7, 2007
















 
 
  
 
 







 
 
  
 
 




Opinion filed June 7, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00227-CR 

                                                    __________

 

                                  MIKEL PETER EGGERT, Appellant

                                                             V.

                                        STATE
OF TEXAS,
Appellee

 



 

                                         On
Appeal from the 266th District Court

                                                           Erath County, Texas

                                                 Trial
Court Cause No. CR12119

 



 

                                                                   O
P I N I O N

 

The jury convicted Mikel Peter Eggert of
conspiracy to fabricate physical evidence, and the trial court sentenced him to
two years confinement, probated for five years, and a fine of $5,000.  We affirm. 

                                                             I.  Background Facts








Mikel Peter Eggert and his father Peter Hellmuth
Eggert were indicted for conspiracy to fabricate physical evidence by making,
presenting, or using the purported affidavits of Kim Whiteley or M.W. with the
knowledge that they were false and with the intent to affect an appeal pending
in this court.[1]  The indictments were consolidated, and Peter
and Mikel were tried together.  The jury
found both guilty, and the trial court assessed punishment at two years
confinement and a $5,000 fine.  The trial
court probated only the confinement portion of the sentence.

                                                                       II.  Issues

Mikel challenges his conviction with twelve
issues.  These can be grouped into two
areas: sufficiency of the evidence and the denial of Mikel=s motion for new trial.

                                                           III.
 Standard of Review

In reviewing claims of legal sufficiency of the
evidence, we review all of the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex. Crim. App. 2000); Clewis
v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996).  Due deference must be given to the fact‑finder=s determination, particularly
concerning the weight and credibility of the evidence.  Johnson v. State, 23 S.W.3d 1 (Tex. Crim. App. 2000); Jones
v. State, 944 S.W.2d 642 (Tex. Crim. App. 1996).

To determine if the evidence is factually
sufficient, the appellate court reviews all of the evidence in a neutral
light.  Watson v. State, 204
S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling in part Zuniga v. State,
144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson, 23 S.W.3d at 10-11;
Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Clewis,
922 S.W.2d at 129.  Then, the reviewing
court determines whether the evidence supporting the verdict is so weak that
the verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence.  Watson, 204 S.W.3d at 414-15;  Johnson, 23 S.W.3d at 10-11.

                                                                     IV.
Analysis

A.  Was
There Sufficient Evidence of a Conspiracy?








Mikel argues initially that there was insufficient
evidence of a conspiracy between him and his father, that the evidence reveals
that Peter Eggert acted alone, and that at most the evidence indicates that he
knew the Whiteley affidavits existed.  A
person commits criminal conspiracy if, with the intent that a felony be
committed, he agrees with one or more persons that one or more of them will
engage in conduct that constitutes the offense and one or more of them performs
an overt act in furtherance of the agreement. Williams v. State, 646
S.W.2d 221, 222 (Tex. Crim. App. 1983).  Because
conspirators= work is
often clandestine in nature, direct evidence is not required to support a
conviction for criminal conspiracy; circumstantial evidence will suffice.  Butler
v. State, 758 S.W.2d 856, 860 (Tex. App.CHouston
[14th Dist.] 1988, no pet.).  An
agreement constituting a conspiracy may be inferred from the acts of the
parties.  Tex. Pen. Code Ann. '
15.02(b) (Vernon 2003).

We have on this same day affirmed Peter Eggert=s conviction.[2]  We have found that the  evidence was sufficient to show that Peter
knew Gallardo was guilty of indecency with a child by exposure but proceeded
nonetheless to attempt to persuade Kim and M.W. to execute affidavits recanting
any allegation of wrongdoing by Gallardo and that he did so in an attempt to
impact Gallardo=s pending
appeal in this court.[3]  This evidence is sufficient to satisfy the
requirement of an overt act.  The
evidence is also sufficient to support the jury=s
finding that Peter Eggert=s
actions were done as part of a conspiracy with his son.

Mikel was integrally involved in Gallardo=s representation.  He was Gallardo=s
attorney-in-fact for all federal matters.[4]  He spoke with Assistant District Attorney
Jason Cashon twice about Gallardo=s
case.  At one meeting, they discussed a
potential writ of habeas corpus.  Mikel
was not licensed to practice law in Texas.  When the Eggerts needed a Texas lawyer to appear in state court on the
application for writ of habeas corpus, Mikel called a law school friend, Joe
Lopez.  Lopez agreed to participate, and
Mikel signed Lopez=s name to
the pleadings that were filed in this court in connection with the Gallardo
appeal.








The Eggerts=
intent was to prove Gallardo=s
actual innocence.  Mikel was aware that
Gallardo had pleaded guilty and that Gallardo signed a stipulation
acknowledging his guilt.  Mikel was
present for the meeting between Kim Whiteley and his father, and he had
previously spoken with her.  He testified
that his father prepared the Whiteley affidavits but acknowledged that they
discussed them before they were prepared and that he printed them off and read
them before they were given to Kim.  Kim
described Mikel=s role at
the meeting differently.  She testified
that he typed up the papers that were given to her and that it took him fifteen
to twenty minutes to do so.  She also
testified that she told Peter that the affidavits were false.  Mikel described this testimony as a lie.

This evidence was legally and factually sufficient
to support the jury=s finding
that Mikel conspired with his father. 
Mikel=s own
testimony is sufficient to establish that, at a minimum, he was aware that Kim
and her daughter were being asked to sign affidavits that recanted any
allegation of wrongdoing and that were completely inconsistent with his client=s prior admissions to the court. He
knew that he needed a determination of actual innocence to block Gallardo=s deportation.  He was integrally involved in all phases of
Gallardo=s
representation:  he visited with his
father about the Whiteley affidavits before they were prepared, he visited with
Kim before their meeting, he read the affidavits before they were given to Kim,
and he knew that they were completely inconsistent with his client=s admissions.  The jury was responsible for resolving
conflicts in the evidence.  It could,
therefore, choose to believe Kim=s
testimony that Mikel typed the papers rather than Mikel=s
testimony that he merely printed them off.

Based upon this evidence, a rational juror could
have found beyond a reasonable doubt that Mikel conspired with his father to
fabricate evidence.  Jackson, 17 S.W.3d at 668-69.  If the evidence is viewed in a neutral light,
the evidence supporting the jury=s
verdict is not so weak that the verdict is clearly wrong or manifestly unjust,
nor is the verdict against the great weight and preponderance of the
conflicting evidence. Watson, 204 S.W.3d at 414-15. Issues one and two
are overruled.

B.  Was
There Sufficient Evidence of Intent?

Mikel next argues that there was insufficient
evidence that he intended to use the Whiteley 
affidavits to affect the outcome of the Gallardo appeal.  His own testimony belies that
contention.  He was asked:

Q.        You
were trying to prove his actual innocence, were you not, of Marcos Gallardo?

 

A.        Yes.








 

            Q.        And B
huh B if those
affidavits had been signed by Kim and [M.W.] as they had been prepared, if they=d been notarized and actually filed in
[this] court, it B it could
very well have affected the outcome of that case, could it not?

 

            A.        I=m
going to assume so, I have no idea, I have no way of knowing, I would hope so.

 

            Q.        You would expect so, would you not?

 

            A.        I would.

 

On April 5, 2004, Gallardo filed a motion to extend the time for
filing his brief with this court.  Mikel
testified that he signed Lopez=s
name to the pleadings that were filed with this court.  Thus, he signed the motion for extension and
represented to this court:

Appellant=s
counsel has recently discovered new evidence which controverts the State=s original allegations.  Appellant needs additional time to file his
brief in order to document such new evidence.

 

The only evidence of Anew
evidence@ was the
proposed Whiteley affidavits.  Mikel
represented to this court that additional time was needed to document this new
evidence.  The only evidence of efforts
to document new evidence was the effort to have the Whiteleys sign affidavits.

The only logical conclusion that can be drawn from
the evidence is that the Eggerts wanted the Whiteleys to sign the affidavits so
that they could be used in some manner in connection with the Gallardo
appeal.  The evidence was legally and
factually sufficient to support the jury=s
determination that Mikel intended to use the Whiteley affidavits to affect
Gallardo=s
appeal.  Issues three and four are
overruled.

C.  Legal
Impossibility.

Mikel next argues that the evidence was legally or
factually insufficient to establish his intent to affect the Gallardo appeal
because the Whiteley affidavits could not have been considered by this
court.  The State responds that
consideration of the Whiteley affidavits by this court was not legally
impossible and that the language of Tex.
Pen. Code Ann. '
37.09 (Vernon 2003) makes this immaterial because the State was not required to
prove that the affidavits would or could have affected the outcome of the
Gallardo appeal.








We agree with the State.  Section 37.09 required the State to prove
that Mikel conspired to make, present, or use a document knowing that it was
false and with the intent to affect the course or outcome of the Gallardo
appeal.  The statute is silent regarding
any requirement that the State prove the attempt would have succeeded, and we
have found no case recognizing or imputing such a requirement.  Moreover, we believe such a requirement is
inconsistent with the statute=s
plain intent.  Our judicial system
necessarily relies upon a baseline belief in the sanctity of the process.  Any attempt to use fabricated evidence B regardless of the ultimate success of
that attempt B is
completely inconsistent with not only the administration of justice but also
with the integrity of the process.  The
statute recognizes this by outlawing a wide range of activities whose mere
presence could undermine confidence in the judicial system.  It would make no sense to say that an attempt
to make, present, or use fabricated evidence is any less culpable merely because
the attempt was poorly conceived.

The State was not required to prove that this
court could have considered the Whiteley affidavits or that those affidavits
would have affected the outcome of the Gallardo appeal. The State was merely
required to prove that Mikel intended to affect the outcome of the Gallardo
appeal. Mikel=s fifth
issue is overruled.

D.  Was
There Sufficient Evidence that Mikel Made, Presented, or Used an Affidavit?

Mikel next argues that the evidence was legally
and factually insufficient because the documents given to Kim were not
purported affidavits as alleged in the indictment.[5]  Mikel=s
position is that the documents could not become an affidavit until executed and
that there was no evidence that he ever represented to anyone that the
documents given to Kim were signed. 
Mikel=s
argument is essentially that there was a fatal variance between the allegations
in the indictment and the proof offered at trial.  See Gollihar v. State, 46 S.W.3d 243,
246 (Tex. Crim. App. 2001) (a variance occurs when a discrepancy exists between
the allegations in the indictment and the proof at trial).








Only a material variance renders the evidence
insufficient.  Fuller v. State, 73
S.W.3d 250, 253 (Tex.
Crim. App. 2002).  To determine whether a
variance violated Mikel=s
substantial rights, we must decide if the indictment sufficiently informed him
of the charges to allow him to prepare an adequate defense or if prosecuting
under the deficient document would subject him to a subsequent prosecution for
the same offense.  Id. 


Mikel did not file a motion to quash his
indictment or otherwise object to the language of that instrument.  The documents he gave Kim were entitled AAFFIDAVIT OF KIMBERLY WHITELEY@ and AAFFIDAVIT
OF [M.W.].@  Both contained signature lines for the
affiant and signature lines and oaths for the notary.  By the use of the word Apurported,@
the State acknowledged that these documents were not executed.  It may have been possible to describe these
documents differently and more precisely, but we cannot discern that the
indictment prevented Mikel from preparing an adequate defense or would subject
him to subsequent prosecution in connection with the documents he gave
Kim.  Issues six and seven are overruled.

E.  Are
the Affidavits Work Product?

Section 37.09 prohibits tampering with or
fabricating physical evidence, but the statute does not apply Aif the record, document, or thing
concealed is privileged or is the work product of the parties to the
investigation or official proceeding.@  Section 37.09(b).  Mikel argues that the Whiteley affidavits
were work product, that the statutory exception applies, and that the evidence
was, therefore, legally and factually insufficient.

Section 37.09 proscribes several different methods
of tampering with or fabricating physical evidence, but the work-product
exception by its terms only applies to records, documents, or things concealed.  See Cuadra v. State, 715 S.W.2d 723,
724 (Tex. App.CHouston
[14th Dist.] 1986, pet. ref=d)
(the work-product exception applies only to concealed documents).  Mikel was indicted for conspiracy to make,
present, or use false affidavits. 
The exception is inapplicable, and issues eight and nine are overruled.

F.  Is
the Evidence that Mikel Knew the Affidavits Were False Sufficient?








We have previously found sufficient evidence that
Mikel and his father conspired to fabricate evidence.  Mikel knew that, to block Gallardo=s deportation, he needed to set aside
the conviction for indecency with a child by exposure.  Mikel knew that his client had pleaded guilty
to this charge and had signed a stipulation establishing his guilt.  The evidence is clear that Mikel and his
father decided to overcome Gallardo=s
admission by having the victim and her mother recant any allegation of
wrongdoing.  The Whiteley affidavits are
completely inconsistent with Gallardo=s
prior confession.

Excluding the Eggerts=
testimony, no witness testified that either the victim or her mother ever
expressed any desire to recant their allegations against Gallardo.  Kim=s
testimony was exactly the opposite.  She
testified that Lee Roy Gaitan approached her one day and told her that some
lawyers wanted to talk to her daughter about changing her statement and that,
if the charges against Gallardo were dropped, the lawyers would make it worth
her while.  This evidence is legally and
factually sufficient to establish that Mikel knew the Whiteley affidavits were
false when he gave them to Kim.  Issues
ten and eleven are overruled.

G.  Did
the Trial Court Properly Deny Mikel=s
Motion for New Trial?

Mikel filed a motion for new trial that was based
in part on newly discovered evidence. 
Peter  testified at trial that he
had tape-recorded his conversations with Gaitan but that they had been
accidentally erased.  Peter contended
that after the trial he was able to recover part of the recordings and that he
prepared a transcript.  The trial court
held a hearing and ordered Peter to produce all tape or digital recordings of
his conversations with Gaitan as well as the digital recording device with
memory card and the original analog tape used to create his transcript.  Mikel=s
motion for new trial was overruled without further hearing or evidence.








We review the grant or denial of a motion for new
trial under an abuse of discretion standard. 
See Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).  We may not substitute our judgment for that
of the trial court, Cantu v. State, 842 S.W.2d 667, 682 (Tex. Crim. App.
1992), and credibility of the witnesses is primarily a determination for the
trial court. Hoyos v. State, 951 S.W.2d 503, 511 (Tex. App.CHouston [14th Dist.] 1997), aff=d, 982 S.W.2d 419 (Tex. Crim. App.
1998).  As finder of fact, the trial
court may accept or reject any or all of the testimony given by State or
defense witnesses.  Johnson v. State,
571 S.W.2d 170, 173 (Tex. Crim. App. 1978); see also Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 
Thus, we are authorized to apply a deferential standard of review to the
trial court=s
resolution of historical facts and may rely upon implied findings of fact that
are supported by the record to uphold the trial court=s
ruling, even when the trial court is not faced with expressly conflicting
affidavits or testimony.  Charles v.
State, 146 S.W.3d 204, 206 (Tex. Crim. App. 2004); Villarreal v. State,
79 S.W.3d 806, 811‑12 (Tex. App.C
Corpus Christi 2002, pet. ref=d).

A new trial shall be granted an accused where
material evidence favorable to the accused has been discovered since
trial.  Tex.
Code Crim. Proc. Ann. art. 40.001 (Vernon 2006).  The party who moves for a new trial based on
newly discovered evidence must satisfy the following four‑part test:  (1) the newly discovered evidence was unknown
or unavailable to the accused at the time of his trial;  (2) the accused=s
failure to discover or obtain the evidence was not due to a lack of
diligence;  (3) the new evidence is
admissible and is not merely cumulative, corroborative, collateral, or
impeaching; and (4) the new evidence is probably true and will probably bring
about a different result in another trial. 
See Keeter v. State, 74 S.W.3d 31, 36‑37 (Tex. Crim. App. 2002).

The record does not establish an abuse of
discretion.  Mikel knew about the
recordings at the time of trial because his father testified about them.  Whether he exercised due diligence to recover
those recordings before trial is inherently a fact issue.  Under our deferential standard of review, we
cannot second-guess the trial court=s
implied finding that he did not do so. 
Furthermore, the only purpose of the new evidence was to impeach Gaitan=s testimony about his conversations
with Peter Eggert.  Because impeachment
evidence is not Anew
evidence@ for
purposes of a new trial, this also supports the trial court=s decision.  Issue twelve is overruled.

                                 V. Holding

The judgment of the trial court is affirmed.

 

PER CURIAM

 

June 7, 2007

Do not publish.  See
Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











[1]Marcos Gallardo pleaded guilty to the offense of
indecency with a child by exposure.  He
filed an application for writ of habeas corpus. 
The trial court denied that application, and he appealed to this
court.  We affirmed the trial court.  Gallardo v. State, No. 11-04-00049-CR
(Tex. App.CEastland, Sept. 30, 2004, no pet.).  All references to Gallardo=s appeal are to Cause No. 11-04-00049-CR.





[2]Eggert v. State,
No. 11-05-00234-CR (Tex.
App.CEastland, June 7, 2007, no pet. h.).





[3]M.W. was Gallardo=s victim;
Kim Whiteley was her mother.





[4]In addition to the habeas corpus proceeding, Mikel was
representing Gallardo in his deportation proceeding.





[5]The indictment alleged that Mikel conspired with:

 

Peter
Hellmuth Eggert, knowing that an official proceeding was pending, to-wit: Cause
Number 11-04-00049-CR in the Court of Appeals for the Eleventh District of
Texas, entitled Marcos Gallardo v. State of Texas, made, presented or used a
record or document, to-wit: the purported affidavit of Kim Whiteley, or [M.W.],
with knowledge of its falsity and with intent to affect the outcome of the
official proceeding described above.