**David Lee LEWIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 71718.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 25, 1995.

Rehearing Denied Nov. 29, 1995.

Jon Anderson, Lufkin, for appellant.

Julie A. Alston, Asst. District Attorney, Lufkin, Robert A. Huttash, State's Atty., Austin, for State.

*OPINION*

MALONEY, Judge.

Appellant pled guilty to the offense of capital murder for intentionally causing the death of an individual during the course of a burglary.[1] Tex.Penal Code Ann. § 19.03(a)(2). The jury affirmatively answered the submitted issues prescribed by Article 37.071(b) of the Texas Code of Criminal Procedure and the trial court assessed punishment at death. Tex.Code Crim.Proc. Ann. art. 37.071(e).[2] Appeal to this Court is automatic. Article 37.071(h). Appellant raises sixteen points of error. We will affirm.

Appellant does not challenge the sufficiency of the evidence. Therefore, we will address only the facts necessary to resolve each point of error.

In points of error one and three, appellant alleges trial error in the denial of his challenges for cause. However, we note that appellant failed to use all of his peremptory strikes.

When the trial court errs in overruling a challenge against a venireperson, the defendant is harmed only if he uses a peremptory strike to remove the venireperson and thereafter suffers a detriment from the loss of the strike. *Demouchette v. State*, 731 S.W.2d 75, 83 (Tex.Crim.App.1986), *cert. de-*

---

1. Appellant was found guilty of the same offense in April 1987, but that conviction was reversed and remanded for a new trial by this Court because a pertinent part of the trial record had been lost. *See Lewis v. State*, 844 S.W.2d 750 (Tex.Crim.App.1993).

2. Unless otherwise indicated, all references to articles are to those in the Texas Code of Criminal Procedure.

*nied*, 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987). Error is preserved only if appellant used all his peremptory strikes, asked for and was refused additional peremptory strikes, and was then forced to take an identified objectionable juror whom he would have struck had the trial court granted his challenge for cause or granted him additional peremptory strikes so that he might strike the juror. *Adanandus v. State*, 866 S.W.2d 210, 220 (Tex.Crim.App.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994); *Satterwhite v. State*, 858 S.W.2d 412, 415 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 114 S.Ct. 455, 126 L.Ed.2d 387 (1993); *Demouchette*, 731 S.W.2d at 83.

The record reflects that appellant used only six of his peremptory strikes by the time the final juror was seated. Therefore, he can show no harm and has failed to preserve any error for our review. *Demouchette*, 731 S.W.2d at 83. We overrule points of error one and three.

■ By way of point of error two, appellant complains that the trial court erred in allowing the State to use peremptory challenges against prospective jurors Owens and Boyett because of their views on the death penalty. Appellant incorrectly contends that it is a violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), for the State to utilize peremptory strikes to exclude prospective jurors who are not in favor of the death penalty. Peremptory challenges may be made for any reason so long as they are not exercised in a racially discriminatory manner. Article 35.261; *Batson v. Kentucky*, *supra*. Further, subject to the constraints of Article 35.261, we have held that a party need not assign a reason for exercising his peremptory strikes, even where the discernable purpose of the strike is to exclude a prospective juror who is not in favor of the death penalty. *Barnes v. State*, 876 S.W.2d 316, 325 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994); *Hernandez v. State*, 819 S.W.2d 806, 818 (Tex.Crim.App.1991), *cert. denied*, 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992); *May v. State*, 738 S.W.2d 261, 267–68 (Tex.Crim.App.), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 158 (1987). We overrule appellant's second point of error.

■ In appellant's fourth and fifth points of error, he claims that the trial court erred by admitting his two written confessions into evidence. He argues their admission violated his right to avoid self-incrimination and his right to counsel under the Fifth Amendment because they were not made knowingly, voluntarily, and intelligently or with benefit of counsel. In his sixth point of error, he asserts that the trial court erred by admitting various evidentiary items [3] because they were the "fruits" of the illegal confessions, thereby violating his rights under the Fifth, Sixth, and Fourteenth Amendments. He specifically argues that he was harmed because the State "ha[d] almost no evidence to implicate [him] outside the confession and its fruits" and, therefore, the confessions contributed to his conviction.

Before trial, appellant filed a motion to suppress the oral [4] and written confessions and physical evidence. The trial court held a pre-trial hearing on the motion outside the presence of the jury as required by *Jackson v. Denno*, 378 U.S. 368, 380, 84 S.Ct. 1774, 1782–83, 12 L.Ed.2d 908, 917 (1964), and Article 38.22 § 6. The judge ruled the confessions were obtained legally and would be admissible. Appellant concedes that if the confessions were admissible then so were the "fruits."

Appellant pled guilty in front of the jury during the guilt/innocence phase of his trial. The plea was not negotiated. His two written confessions and the physical evidence were subsequently admitted. Appellant does not challenge the voluntariness of his guilty plea.

■ A nonnegotiated guilty plea is conclusive as to the defendant's guilt and waives

---

**3.** The physical evidence consisted of the murder weapon (a .22 rifle), blue jeans, gloves, and socks.

**4.** After a review of the record, the only oral statements made by defendant appear to be in the context of giving his written confessions.

all nonjurisdictional defects occurring prior to the guilty plea. *Helms v. State*, 484 S.W.2d 925, 927 (Tex.Crim.App.1972); *Wheeler v. State*, 628 S.W.2d 800, 802 (Tex. Crim.App.1982); *see also Jack v. State*, 871 S.W.2d 741, 743 (Tex.Crim.App.1994). Because appellant does not fall within the confines of allowing a possible appeal under Texas Rule of Appellate Procedure 40(b)(1),[5] we need not pass upon appellant's claim that the trial court erred in denying his pre-trial motion to suppress. *See Wheeler, supra; Cleveland v. State*, 588 S.W.2d 942, 944 (Tex. Crim.App.1979). Points of error four through six are overruled.[6]

 Next, in points of error seven through ten, appellant posits that the admission of evidence during the punishment phase regarding various unadjudicated extraneous offenses[7] violated his rights to equal protection, due process, and a fair trial. Specifically, he complains that capital defendants should be governed by Article 37.07 § 3(a), and that his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution were violated under *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976).

 Article 37.07 § 3(a) is inapplicable to capital cases. *Gentry v. State*, 770 S.W.2d 780, 792 (Tex.Crim.App.1988), *cert. denied*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1013 (1989). The legislature and this Court have long held that unadjudicated offenses are admissible during the punishment phase of a capital murder trial. Article 37.071; *Kemp v. State*, 846 S.W.2d 289, 307 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993); *Smith v. State*, 676 S.W.2d 379, 390 (Tex. Crim.App.1984), *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985). Further, this Court has consistently held that admission of extraneous unadjudicated offenses does not violate an accused's constitutional rights to due process and equal protection. *Kemp*, 846 S.W.2d at 307; *Williams v. State*, 622 S.W.2d 116, 120 (Tex.Crim.App. 1981), *cert. denied*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982). Appellant raises no novel arguments to persuade us to revisit these holdings. Therefore, appellant's seventh through tenth points of error are overruled.[8]

 In appellant's eleventh point of error, he maintains that the trial court erred by denying his requested instruction defining "deliberately."[9] He argues that he made a

5. Rule 40(b)(1) of the Rules of Appellate Procedure limits the review of guilty plea cases to situations in which there was a plea bargain, the punishment does not exceed that recommended by the prosecutor, and the trial court granted permission to appeal nonjurisdictional errors that occurred prior to the plea or specified that those matters were raised by written pre-trial motions and ruled on before trial. Appellant's plea was not negotiated, therefore, he does not meet this exception.

6. Not only is appellant's complaint procedurally barred, but after a careful review of the record, we note that the trial court filed findings of fact and conclusions of law indicating that appellant's confessions were voluntary. We further note that the trial court's findings are supported by the record and the motion to suppress was properly denied.

7. The unadjudicated offenses consisted of parole violations, a 1986 stabbing, and various burglaries as evidenced by appellant's written confessions to those crimes.

8. In his tenth point of error, appellant also argues that the extraneous offense confessions were used not only to show bad character, but to show appellant's "character for generally making a knowing, voluntary and intelligent waiver of his rights, thus easing the State's burden of proving the admissibility of appellant's confessions to the instant offense." Other than making this statement, appellant does not cite any authority nor make any argument in support of this issue. Therefore, we consider this portion of appellant's point of error inadequately briefed and presenting nothing for our review. Tex.R.App.Proc. 74(f); *Robinson v. State*, 851 S.W.2d 216, 222 n. 4 (Tex.Crim.App.1991), *cert. denied*, —— U.S. ——, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994).

9. Appellant requested the following definition:

"Deliberately" means well advised, carefully considered, not sudden or rash, circumspect, slow in determining, willful rather than merely intentional, formed, arrived at, or determined upon as a deliberate judgment or plan, coolly and steadily, especially according to a preconceived design, giving to weighing facts and arguments with a view to a choice or decision, careful in considering the consequences of a step, slow in action, unhurried, characterized by a reflection, dispassionate, not rash.

clear showing "on voir dire that such an instruction would not only be helpful but necessary to the jury's understanding of the punishment issues." [10]

This Court has previously held that no definition of "deliberately" is required. *See Banda v. State*, 890 S.W.2d 42, 64 (Tex.Crim. App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995); *Johnson v. State*, 853 S.W.2d 527, 537 (Tex.Crim.App. 1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 154, 126 L.Ed.2d 115 (1993). Therefore, the trial court did not err in overruling appellant's requested definition.

Additionally, in the instant case, the trial court did instruct the jury that "deliberately:"

> in accordance with common usage, means something more than intentional and something less than premeditation. It contemplates a conscious decision involving a thought process which embraces more than mere will to engage in the conduct.

We have previously held that this definition is sufficient to apprise the jury that the terms "intentional" and "deliberate" are distinct and different. *Bigby v. State*, 892 S.W.2d 864, 890 (Tex.Crim.App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2617, 132 L.Ed.2d 860 (1995); *see also Fearance v.*

*State*, 620 S.W.2d 577, 584 (Tex.Crim.App. 1980), *cert. denied,* 454 U.S. 899, 102 S.Ct. 400, 70 L.Ed.2d 215 (1981). The trial court did not err by providing more than what this Court requires. Point of error eleven is overruled.

 In point of error twelve, appellant argues that the trial court erred in failing to submit a requested *Penry* issue to the jury.[11] *See Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). The trial court gave a nullification instruction, but refused to give a separate special issue.[12]

We have previously held that a trial court does not err in submitting a "nullification instruction" rather than a separate special issue. *Rodriguez v. State*, 899 S.W.2d 658, 664 (Tex.Crim.App.1995); *Smith v. State*, 898 S.W.2d 838, 854 (Tex.Crim.App.1995); *Robertson v. State*, 871 S.W.2d 701, 710–11 (Tex. Crim.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 155, 130 L.Ed.2d 94 (1994). Further, we have already held that a nullification instruction such as the one given is sufficient to meet the constitutional requirements of *Penry v. Lynaugh*. *Mason v. State*, 905 S.W.2d 570, 576 (Tex.Crim.App.1995) Appellant's twelfth point of error is overruled.[13]

---

**10.** Appellant cites this Court to various venirepersons' testimony regarding their views on the difference between "intentional" and "deliberate." However, most prospective jurors stated that they could see a difference between the terms and would hold the State to a higher burden on the first special issue.

**11.** Appellant's offense occurred on November 30, 1986. Therefore, appellant did not receive the new special issue concerning mitigation. *See* article 37.071 § 2(e) (for offenses committed on or after September 1, 1991); article 37.0711 § 3(e) (for offenses committed before September 1, 1991). Because appellant's trial occurred prior to the effective date of the new statute, September 1, 1993, we use the former version of article 37.071.

**12.** The trial court in the instant case submitted the following charge:

> You are instructed that when you deliberate on the questions posed in the special issues, you are to consider all relevant mitigating circumstances, if any, supported by the evidence presented in the trial, whether presented by the State or the defendant. A mitigating cir-

cumstance may include, but is not limited to, the voluntary intoxication of a Defendant at the time of the commission of an offense, any aspect of the defendant's character, background, record, emotional instability, intelligence or circumstances of the crime which you believe could make a death sentence inappropriate in this case. If you find that there are any mitigating circumstances in this case, you must decide how much weight they deserve, if any, and thereafter, give effect and consideration to them in assessing the Defendant's personal culpability at the time you answer the special issue. If you determine, when giving effect to the mitigating evidence, if any, that a life sentence as reflected by a negative finding to the issue under consideration, rather than a death sentence, is an appropriate response to the personal culpability of the Defendant, a negative finding should be given to that special issue under consideration.

**13.** Appellant briefly notes that the nullification charge improperly places the burden of proof on appellant. However, we have previously addressed this issue against appellant. *See Barnes,* 876 S.W.2d at 330.

Appellant's thirteenth point of error challenges the validity of the second special issue regarding future dangerousness.[14] He specifically states that the included-term "probability" misstates the burden of proof and results in a denial of due process. Appellant concedes, however, that we have previously addressed this issue against him. *Jones v. State,* 843 S.W.2d 487, 496 (Tex. Crim.App.1992), *cert. denied,* 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993); *Sosa v. State,* 769 S.W.2d 909, 916–17 (Tex.Crim. App.1989).

The trial court properly instructed the jury that the State was required to prove each special issue "beyond a reasonable doubt." The use of the term "probability" does not lessen the burden of proving the issues to anything less than beyond a reasonable doubt. *Jones,* 843 S.W.2d at 496; *Sosa,* 769 S.W.2d at 917. Appellant raises no novel argument or authority to persuade us to revisit these holdings. Point of error thirteen is overruled.

In appellant's fourteenth point of error, he complains that the trial court's instruction to not consider parole during deliberations effectively informed the jury about parole considerations.[15] Appellant specifically states that he objected to the instruction "for fear it would inform the jury of the very thing the instruction told them to avoid." Appellant does not make any further argument as to why the jury might misinterpret the instruction, nor does he cite any authority in support of his argument. Therefore, we consider the point inadequately briefed and presenting nothing for our review. Tex. R.App.Proc. 74(f); *Robinson v. State,* 851 S.W.2d 216, 222 n. 4 (Tex.Crim.App.1991), *cert. denied,* —— U.S. ——, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994).

Finally, in points of error fifteen and sixteen, appellant disputes decisions made by the trial court regarding his motion for new trial. In point of error fifteen, appellant contends that the trial court erred by refusing to permit certain testimony at the motion for new trial hearing that would have revealed jury misconduct directly affecting the validity of the verdict. In point of error sixteen, appellant claims that the trial court abused its discretion by overruling his motion for new trial. We shall address the latter first.

It is well established that the granting or denying of a motion for new trial lies within the discretion of the trial court. *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex. Crim.App.1993). We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable. *Id.* at 695 n. 4. The trial court is the sole judge of the credibility of the testifying jurors. *Thomas v. State,* 699 S.W.2d 845, 854 (Tex. Crim.App.1985). "Where there is conflicting evidence on an issue of fact as to jury misconduct, the trial judge determines the issue and there is no abuse of discretion in overruling the motion for new trial." *Id.*

Texas Rule of Appellate Procedure 30(b) states in pertinent part that a new trial shall be granted when: the verdict was decided by lot or in any manner other than by a fair expression of opinion by the jurors; a juror has received a bribe or has been guilty of other corrupt conduct; after retiring, the jury received other evidence; a juror conversed with another in regard to the case; or the court finds the jury has engaged in such misconduct that the accused has not received a fair and impartial trial. In the instant case, appellant asserts that the misconduct consisted of improper jury discussion.

To show reversible error based on improper jury discussion, the defendant must prove the existence of the following factors:

1) a misstatement of the law;

2) asserted as a fact;

---

**14.** "Is there a probability that the Defendant, David Lee Lewis, would commit criminal acts of violence that would constitute a continuing threat to society?" Article 37.071 § 2(b)(2).

**15.** The trial court gave the following instruction:

> During your deliberations, you are not to consider or discuss any possible actions of the Board of Pardons and Paroles or the Governor, nor how long this Defendant will be required to serve on a sentence of life imprisonment.

3) by one professing to know the law;

4) which is relied upon by other jurors;

5) who for that reason changed their vote to a harsher punishment.

*Sneed v. State,* 670 S.W.2d 262, 266 (Tex. Crim.App.1984); *Buentello v. State,* 826 S.W.2d 610, 614 (Tex.Crim.App.1992) (*Sneed* test still viable under Tex.R.App.Proc. 30(b)).

Appellant's motion for new trial centers around complaints by Juror Norton that jury misconduct occurred during deliberations. Norton alleges that: (1) the jury discussed parole issues and repeat offenders; (2) Armstrong, the jury foreman, told her to change her vote on the first special issue because it was the second issue that really counted; (3) Armstrong told her to change her vote on the second issue because appellant would get an "automatic retrial"; (4) Armstrong stated that deliberations would be quick because he wanted to get home in time to see his favorite television show; and (5) Armstrong was

"hateful" and "pushy" toward her. Norton initially voted "no" on both special issues and was the only one to do so on the second issue. Appellant and the State called six of the former jurors as witnesses for the hearing.

 The following facts were adduced at the motion for new trial hearing: [16]

(1) Armstrong, the presiding juror, responded to a question by a juror during deliberations asking how long a person would have to actually serve for a life sentence. Armstrong replied, "I don't know; six, eight, nine, ten." Armstrong then immediately said, "Wait a minute. We are not even supposed to be talking about something like that, so let's move on with the discussion of the deliberation of the evidence." Further, the only discussion regarding repeat offenders occurred outside of deliberations.

---

**16.** The State notes in their brief that the trial court made findings of fact and conclusions of law regarding the motion for new trial. However, we determine that the findings and conclusions are not properly before us and are unnecessary to our disposition of his point of error.

Following the motion for new trial hearing, appellant's motion was summarily denied. The trial court made no oral findings nor is there any evidence that findings were requested by either party. Subsequently, notice of appeal was filed, the record was submitted, and appellant's brief was filed. It is at this point that the trial court appears to have *sua sponte* issued a new order denying the motion and accompanied this order with findings and conclusions. A supplemental transcript was then filed by the State with this Court. The trial court lacked jurisdiction to make these findings.

Texas Rules of Appellate Procedure 30 and 31 do not require that findings of fact or conclusions of law be filed. Additionally, Rule 31(e)(2) states that "[t]he judge shall not sum up, discuss or comment on evidence in the case. The judge shall grant or deny the motion for new trial." However, it is not reversible error for the trial judge to sum up the evidence if appellant does not show he was harmed by the trial judge's action. *Tate v. State,* 834 S.W.2d 566 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).

Further, we find *Goodin v. State,* 750 S.W.2d 857 (Tex.App.—Corpus Christi 1988), regarding Texas Rule of Appellate Procedure 55, to be instructive. In *Goodin,* appellant attempted to supplement the appellate record with overdue bills of exception. The appellate court stated that these bills could not be supplemental materi-

al and "are, if anything, new materials which were prepared and added to the record when the trial court lacked jurisdiction." *Id.* at 860. The court went on to state:

[Appellate] Rule 55 must be read in context with rules 40(b)(2), limiting the authority of the trial court to act once the appellate record is filed, rule 51(b), requiring a designation of material to be included in the transcript, and rule 53(a), requiring a designation of matters to be included in the statement of facts.

Rule 55 speaks to material "omitted from the transcript or statement of facts." The term "omitted" implies that the material existed when the appellate record was prepared but was not included in it. Appellant's bills did not exist when the appellate record was prepared and can hardly be considered "omitted" material.

In *Green v. State,* 906 S.W.2d 937 (Tex.Crim. App.1995), we recently abated a case and remanded it to the trial court to reissue findings and conclusions it made after the appellant's brief was filed. However, in *Green,* the trial court had a mandatory duty to file findings after a *Jackson v. Denno* hearing. Therefore, the duty to make the findings existed prior to the trial court's loss of jurisdiction and our abatement of the appeal was logical. In the instant case, the trial court had no duty and had made no findings prior to the loss of jurisdiction. The trial court *sua sponte* issued findings after appellant's brief was filed with this court. We are under no duty to abate the instant proceedings to allow the trial court to reissue findings which it had no duty to make prior to its loss of jurisdiction.

(2) No juror other than Norton heard Armstrong tell her to change her vote on either special issue.

(3) Armstrong did not state that there would be an automatic retrial, although he did mention that there would be an appeal. However, Juror Yakovsky testified that Armstrong immediately admonished the jury that they could not discuss the subject of an appeal. Additionally, Juror Fletcher testified that they were informed during jury selection that the instant case was a retrial.

(4) Armstrong admitted stating over lunch that he would like to see his favorite television show *if* they got home, but he did not state that he would rush deliberations to do so.

(5) No one other than Norton perceived Armstrong's demeanor to be "pushy" or "hateful" when he spoke with her. Jurors Fletcher and Yakovsky each testified that Armstrong did not treat Norton differently than the other jurors.

(6) Armstrong did not profess to have any special knowledge of the law concerning parole. Although Armstrong had informed his fellow jurors that he had served on a jury before, Norton admitted that she knew he was a retired builder/carpenter and that he had only mentioned that he had experienced a jury trial before.

(7) No statement about parole had an effect on the vote of Norton. Norton testified that she knew that she "had a choice," knew that she "could have went ahead and voted yes," but Armstrong made her feel like she was "holding everybody up."

(8) At the end of the voting during deliberations, the jury polled themselves to make sure everyone was satisfied with their vote, and all jurors, including Norton, stated that they were satisfied. Yakovsky testified that several jurors checked with Norton to confirm her vote because they were concerned about her decision.

(9) The trial court polled the jury and each juror, including Norton, confirmed their answers to the special issues.

The factors of the *Sneed* test are not met in the instant case. There was no assertion of a misstatement of law as fact by any juror professing to know the law. Any misstatement by a juror was asserted as opinion and not as fact. Norton never stated that she relied upon any misstatements of the law in changing her answers to the special issues. Further, if there was any misconduct due to the mention of parole or appeal, it was cured by the immediate admonishment to stop any such discussion. Therefore, the trial court did not abuse its discretion.

 Next, to support his contention that the trial court erred by not allowing relevant testimony that revealed jury misconduct, appellant cites this Court to two bills of exception involving a single juror's testimony. A repetition of Juror Cloonan's testimony before, during, and after the bills of exception are useful in our resolution of this issue.

[Defense Counsel]: All right. Now, did you overhear Mr. Armstrong telling Ms. Norton something about retrials?

A. Okay. And I don't want to use the word "retrial" per se, but—

\* \* \* \* \* \*

And I got the impression he was saying something like, "We're just passing this down the line. This is the State's responsibility. And what we're doing is passing it down the line. This is part of the procedure."

Q. Okay. What is your perception of what he was saying in terms of whether or not there would be another procedure or another trial? What was he trying—I mean, you're sitting here listening to this. What is this man trying to tell her?

[State]: Your honor, I'll object. It calls for speculation on the part of the witness.

THE COURT: You're actually asking what Mr. Armstrong's state of mind is.

[Defense Counsel]: No, sir. I'm asking how—how he perceived what Mr. Armstrong was saying; not what Mr. Armstrong had in his mind, but what he heard the man saying. Because I assume—and I'll ask him to repeat every word he said. But the question is, what was the man trying to tell her; what was the perception that he got out of it?

[Trial court sustains the State's objection]

(Bill of Exceptions)

Q. What was Mr. Armstrong trying to tell Ms. Norton?

A. I felt like he was trying to convince Ms. Norton to vote—make the vote unanimous, based on his thoughts and, I guess, leading—leading her to believe that there would be another procedure like the one that we were in there, like we just had experienced for the prior four days.

Q. Okay. When you say another procedure like the one you'd been in, are you talking about another trial and another jury deliberation?

A. Without him—without me—I can't really recall him saying retrial. But that's what I was thinking he was—I felt like he was taking pressure off of Ms. Norton because I felt like she was real sensitive of the overall situation and didn't want to feel like she was the one that was going to cause the death penalty in this particular case.

\* \* \* \* \* \*

(Bill of Exceptions concluded.)

Q. Mr. Cloonan, what was Mr. Armstrong saying to Ms. Norton?

A. I'm not going to be able to give you exact words, you know, but it was to the effect of, we're not executing David Lewis. It's the State's responsibility. This is part of the procedure. We're just passing it down the line.

Q. Did he make comments concerning there being another procedure?

A. That there—yes, it [sic] did; that there would be another procedure in this—on down the line type thing.

\* \* \* \* \* \*

Q. I'm sorry. Mr. Armstrong make any comments about there being another jury, another trial?

\* \* \* \* \* \*

A. All right. I really can't say, Jon, that he said another trial or another jury, based on my memory.

\* \* \* \* \* \*

Q. Okay. Was your perception of Mr. Armstrong's comments; that there was go-ing to be another trial and, therefore, Ms. Norton's vote didn't matter?

[State]: I object, Your Honor. His question was, was it your perception that Mr. Armstrong told her that there was going to be a new trial and her vote didn't matter. His perception. And it also goes to speculation; the same thing I've objected to earlier.

THE COURT: Sustained.

\* \* \* \* \* \*

(Bill of Exception)

Q. Was it your perception Mr. Armstrong was telling Ms. Norton that her vote didn't matter because there was going to be another trial anyway?

A. Not that her vote—I don't like the part about "her vote didn't matter".

Q. All right. That there would be another trial anyway?

A. That there would be—that this whole deal, they would be checking it. You know, maybe an appeal was brought up in that point, you know, to where the appeals process would be going over it. I feel like I'm not, you know, doing you right here by having a vague memory.

\* \* \* \* \* \*

Q. And I'll ask you the same question that I've asked you before. Was it your perception that Mr. Armstrong was saying there would be another procedure, like with the jury and the evidence and all of that?

A. Yeah, I think that he was leading Ms. Norwood [sic] to think that there would be another trial like we've been through.

The second bill of exceptions was then concluded.

 When inquiring into the validity of a verdict, a juror may not testify as to: any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify as to any

matter relevant to the validity of the verdict or indictment.

Tex.R.Crim.Evid. 606(b). The trial court is allowed broad discretion in making the decision regarding what is relevant to the validity of the verdict. *Buentello*, 826 S.W.2d at 613. Further, "relevance" is determined on a "case-by-case basis, taking into account the court's experiences and observations, the grounds for a new trial set forth in Tex. R.App.Pro. 30(b), and the caselaw which was developed under the predecessor to 30(b), Art. 40.03 V.A.C.C.P." *Id.* at 614. Therefore, we shall apply the five-part *Sneed* test, *supra*, to determine the relevance of Cloonan's excluded testimony. *Id.; see also Rasbury v. State*, 832 S.W.2d 398, 402 (Tex.App.–Fort Worth 1992, pet. ref'd).

First, it is uncertain from Cloonan's testimony whether Armstrong misstated the law because "another procedure" does exist after a defendant is sentenced to death. Second, no evidence is elicited as to whether the statements were asserted as opinion or fact or whether Armstrong professed to know the law. Finally, we can only know from Norton whether the alleged misinformation was relied upon and caused her to change her vote. Because Norton testified as to her own beliefs, Cloonan's perception of what Armstrong said is irrelevant to the validity of the verdict. The trial court did not abuse his discretion by excluding Cloonan's testimony. Points of error fifteen and sixteen are overruled.

The judgment of the trial court is AFFIRMED.

CLINTON, J., concurs in the result.