COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-314-CR

 

 

THOMAS
BRANDON WALLS                                                  APPELLANT

 

                                                   V.

 

THE
STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT
COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

Appellant Thomas Brandon Walls was indicted for
aggravated robbery with a deadly weapon. 
He entered an open plea of guilty, and the trial court postponed
sentencing pending a presentence investigation report (PSI).  He was represented by Attorney Number One.








At the punishment hearing, Appellant was
represented by Attorney Number One and Attorney Number Two.  At the conclusion of the punishment hearing,
the trial court sentenced Appellant to twenty years=
confinement.  Attorney Number Two filed a
motion for new trial, alleging that the trial court had abused its discretion
in assessing punishment.  Attorney Number
One filed a motion for new trial, alleging that the verdict was contrary to the
law and the evidence.  Attorney Number
Three was then substituted for Attorney Number One, and Attorney Number Three
filed a third motion for new trial, alleging that Appellant=s plea
was involuntary and that the verdict was contrary to the law and the evidence.








At the August 15, 2008 hearing on the motions for
new trial, Appellant and his parents testified that Attorney Number One had
represented to them that if Appellant pled guilty, he would be placed on
community supervision.  They testified
that Attorney Number One had told them that he had a special relationship with
the judge, that they had gone to law school together, and that he and the judge
had entered into an agreement regarding Appellant=s
punishment, provided Appellant entered a plea of guilty.  Appellant and his parents denied that
Attorney Number One had told them that there was any possibility of
penitentiary time if Appellant entered a guilty plea.  When asked to explain what Attorney Number
One had promised him, Appellant testified that Attorney Number One had told him
that he could only receive deferred adjudication community supervision if he
entered a plea of guilty.  Appellant also
testified that Attorney Number One had told him that he would not be able to
receive deferred adjudication if he insisted on a jury trial.

On August 25, 2008, the trial court held a
further hearing on the motions for new trial. 
Attorney Number One testified that he never guaranteed either Appellant
or his parents that Appellant would receive community supervision.  He testified that he had told Appellant that
he thought that Appellant had a good chance of receiving community supervision,
but Attorney Number One denied that he had made any promises.  He also denied that he had told Appellant
that he had a special relationship with the judge.  Attorney Number Three attempted to ask
Attorney Number One about disciplinary action the State Bar had taken against
him, but the trial court sustained the State=s
objection and did not allow the testimony.








Appellant appealed to this court, arguing in one
of his three issues that the trial court erred by sustaining the State=s
objection to the question about the State Bar=s
disciplinary actions against Attorney Number One.  The State confessed error, and this court
abated the case, remanding it to the trial court to allow Appellant to question
Attorney Number One concerning the disciplinary action and to allow the trial
court to reconsider its ruling in light of that evidence.

At the hearing on remand, Appellant called
Attorney Number One=s former paralegal to
testify.  The paralegal testified that in
his presence, Attorney Number One had represented to Appellant and his parents
that Appellant would receive community supervision because of an agreement
Attorney Number One had made with the trial judge.  The paralegal also testified that he had
heard Attorney Number One tell Appellant and his parents that Attorney Number
One had a special relationship with the judge. 
The paralegal testified that his son is a former client of Attorney
Number One and that Attorney Number One had given his son a similar guarantee
of community supervision.  The paralegal
also admitted that he has a criminal record and has been to the penitentiary
two or three times.

Attorney Number One admitted that he has been
disciplined by the State Bar and has received a fully probated suspension for
failing to handle clients= cases in a timely manner,
refusing to return a file after he had been discharged, and engaging in other
conduct not clearly described in the abatement hearing.  Attorney Number One testified that 








the other one was
. . . a guy working for me.  He
took some money from his family that they lent him to represent him.  The guy was in jail.  The court in Dallas appointed him an attorney
to represent him.  The attorney got a
really good deal for him, got it reduced to a misdemeanor, and pled the case
out. 

 

And I was not aware that took place, so they said, AWell, you should have
done a better job of supervising the people that work in your office.@

 

I said, AYou know what? You=re absolutely right.  I=ll accept the punishment for that.@  And I got rid of the paralegal that I had.

 

Attorney Number One explained that the disciplinary order was an
agreed order, resulting in the fully probated suspension.

No one designated the trial judge as a witness,
called the trial judge as a witness, or moved to recuse the trial judge because
the trial judge was a fact witness.  The
trial judge did not voluntarily step down. 
The same trial judge presided over all posttrial hearings.  At the conclusion of the abatement hearing,
the trial court again denied Appellant=s
motions for new trial.

There are two remaining issues before this court:
(1) whether Appellant=s plea was entered knowingly,
intelligently, and voluntarily, and (2) whether Appellant was denied effective
assistance of counsel when he entered his guilty plea on December 13, 2007, or
at the punishment hearing on June 13, 2008.








A trial court=s ruling
denying a defendant=s motion for new trial is
reviewed under an abuse of discretion standard.[2]  In considering a motion for new trial, the
trial court possesses broad discretion in determining the credibility of the
witnesses and in weighing the evidence to determine whether a different result
would occur upon retrial.[3]  We do not substitute our judgment for that of
the trial court, but rather, we decide whether the trial court=s
decision was arbitrary or unreasonable.[4]








In the case now before this court, we have a
swearing match contesting whether Attorney Number One represented to Appellant
that he had a special relationship with the judge, whether an ex parte meeting
occurred in which the trial judge and Attorney Number One reached a secret
agreement to guarantee Appellant community supervision, and whether that
representation induced Appellant to enter a plea of guilty that he would
otherwise not have entered.  Appellant=s
parents and Attorney Number One=s paralegal
testified that Attorney Number One had made those representations to
Appellant.  Appellant=s
version was slightly different.  He
testified that Attorney Number One had made the representations and guarantees about
which his parents and the paralegal testified. 
But he also testified that Attorney Number One had told him that he
would not receive deferred adjudication if he insisted on a jury trial instead
of pleading guilty to the court.  All
four denied that Attorney Number One had told them that there was any
possibility of penitentiary time if Appellant entered a guilty plea.

Attorney Number One denied any guarantees or
representations concerning a special relationship with the judge.  He testified that he had told Appellant
merely that he thought Appellant had a good chance of receiving probation if he
entered a guilty plea.








In the instant case, Appellant was charged with
aggravated robbery with a deadly weapon, an article 42.12, section 3g offense.[5]  This charge was but one in a long string of
criminal accusations beginning in Appellant=s
youth.  When Appellant appeared before
the trial court in the case now before this court, he was nineteen years
old.  He had already been charged with
eight different offenses, including three robberies over a period of five weeks
in December 2003 and January 2004.  He
successfully completed a juvenile probation for the third robbery.  In January 2005, Appellant was involved in a
car theft and later received deferred adjudication community supervision for an
unrelated possession of marijuana offense. 
A subsequent March 2006 robbery charge arising from an attempted drug
purchase was dismissed.

When Appellant was seventeen, he and some
companions committed two aggravated robberies with a pistol that Appellant had
obtained.  In the first one, he drove the
getaway car.  Several hours after the
first robbery, the group accosted another man who claimed to have no money, so
they moved on to a second mark and successfully took his money.  The second successful aggravated robbery is
the offense at issue in the instant matter.

Appellant entered an open plea of guilty to the
second successful aggravated robbery, and at the subsequent sentencing, he
admitted his complicity in the first aggravated robbery, although he had not
been charged with that offense.  He also
admitted his previous crimes but assured the trial court that he had changed
his life since attending Kansas State University on a football scholarship and
begged for a lenient sentence.








Never did Appellant claim that he was not
actually guilty or that a jury would have found him not guilty.  The plea documents clearly inform him of the
entire range of punishment, and there is no suggestion that Appellant was
unable to read and understand the documents he executed.  Indeed, Appellant testified at a hearing on
his motions for new trial that his lawyer had told him that he could receive
deferred adjudication only if he entered a plea of guilty.  This is almost correct.  Because aggravated robbery with a deadly
weapon is an article 42.12, section 3g offense, a trial judge could not grant
Appellant Aregular@
community supervision.[6]  He could receive only deferred adjudication
community supervision from the trial judge, as opposed to regular community
supervision, and then only if he entered a plea of guilty or nolo contendere.[7]  A plea of not guilty would make him
ineligible for deferred adjudication community supervision, and a jury cannot
grant deferred adjudication community supervision.[8]

The trial court went beyond the written
admonishments and asked Appellant if he understood that there was no guarantee
that his guilty plea would result in probation and that the full range of
punishment was available.  Appellant
assured the trial court that his guilty plea was made freely and voluntarily.








Appellant also testified that he was Anot
trying to avoid some punishment.@  He explained that, although he did not want
to go to prison, he was open to Adoing a
little county time.@ 
He also admitted that his prior two probations Adidn=t really
work too well@ because he had Acontinued
to commit crimes.@

We hold that the trial court did not abuse its
discretion by denying the motion for new trial because Appellant did not
satisfy his burden to show that his plea was involuntary as a result of
Attorney Number One=s advice and did not satisfy his
burden to show ineffective assistance of counsel.  We overrule Appellant=s issues
and affirm the trial court=s
judgment.

Due to the disturbing allegations in the record
concerning Attorney Number One=s
conduct, however, we also order the clerk of this court to transmit a copy of
this opinion to the Office of the Chief Disciplinary Counsel and the Office of
the General Counsel of the State Bar of Texas.

 

 

LEE
ANN DAUPHINOT

JUSTICE

 

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  October 29, 2009











[1]See Tex. R. App. P. 47.4.





[2]Salazar v. State, 38 S.W.3d 141, 148
(Tex. Crim. App.), cert. denied, 534 U.S. 855 (2001); Lewis v. State,
911 S.W.2d 1, 7 (Tex. Crim. App. 1995); Thomas v. State, 31 S.W.3d 422,
428 (Tex. App.CFort Worth 2000, pet. ref=d).





[3]Valle v. State, 963 S.W.2d 904, 908
(Tex. App.CTexarkana 1998, pet. ref=d); Dusenberry v.
State, 915 S.W.2d 947, 949 (Tex. App.CHouston [1st Dist.] 1996, pet. ref=d).





[4]Lewis, 911 S.W.2d at 7.





[5]Tex. Code Crim. Proc.
Ann. art. 42.12, ' 3g(a)(1)(F) (Vernon
Supp. 2009).





[6]See id. art.
42.12, ' 5(d).





[7]See id. art.
42.12, ' 5(a), (d).





[8]See id.