

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-314-CR

THOMAS BRANDON WALLS                                              APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Thomas Brandon Walls was indicted for aggravated robbery with a deadly weapon. He entered an open plea of guilty, and the trial court postponed sentencing pending a presentence investigation report (PSI). He was represented by Attorney Number One.

---

[1] *See* Tex. R. App. P. 47.4.

At the punishment hearing, Appellant was represented by Attorney Number One and Attorney Number Two. At the conclusion of the punishment hearing, the trial court sentenced Appellant to twenty years' confinement. Attorney Number Two filed a motion for new trial, alleging that the trial court had abused its discretion in assessing punishment. Attorney Number One filed a motion for new trial, alleging that the verdict was contrary to the law and the evidence. Attorney Number Three was then substituted for Attorney Number One, and Attorney Number Three filed a third motion for new trial, alleging that Appellant's plea was involuntary and that the verdict was contrary to the law and the evidence.

At the August 15, 2008 hearing on the motions for new trial, Appellant and his parents testified that Attorney Number One had represented to them that if Appellant pled guilty, he would be placed on community supervision. They testified that Attorney Number One had told them that he had a special relationship with the judge, that they had gone to law school together, and that he and the judge had entered into an agreement regarding Appellant's punishment, provided Appellant entered a plea of guilty. Appellant and his parents denied that Attorney Number One had told them that there was any possibility of penitentiary time if Appellant entered a guilty plea. When asked to explain what Attorney Number One had promised him, Appellant testified

2

that Attorney Number One had told him that he could only receive deferred adjudication community supervision if he entered a plea of guilty. Appellant also testified that Attorney Number One had told him that he would not be able to receive deferred adjudication if he insisted on a jury trial.

On August 25, 2008, the trial court held a further hearing on the motions for new trial. Attorney Number One testified that he never guaranteed either Appellant or his parents that Appellant would receive community supervision. He testified that he had told Appellant that he thought that Appellant had a good chance of receiving community supervision, but Attorney Number One denied that he had made any promises. He also denied that he had told Appellant that he had a special relationship with the judge. Attorney Number Three attempted to ask Attorney Number One about disciplinary action the State Bar had taken against him, but the trial court sustained the State's objection and did not allow the testimony.

Appellant appealed to this court, arguing in one of his three issues that the trial court erred by sustaining the State's objection to the question about the State Bar's disciplinary actions against Attorney Number One. The State confessed error, and this court abated the case, remanding it to the trial court to allow Appellant to question Attorney Number One concerning the disciplinary

3

action and to allow the trial court to reconsider its ruling in light of that evidence.

At the hearing on remand, Appellant called Attorney Number One's former paralegal to testify. The paralegal testified that in his presence, Attorney Number One had represented to Appellant and his parents that Appellant would receive community supervision because of an agreement Attorney Number One had made with the trial judge. The paralegal also testified that he had heard Attorney Number One tell Appellant and his parents that Attorney Number One had a special relationship with the judge. The paralegal testified that his son is a former client of Attorney Number One and that Attorney Number One had given his son a similar guarantee of community supervision. The paralegal also admitted that he has a criminal record and has been to the penitentiary two or three times.

Attorney Number One admitted that he has been disciplined by the State Bar and has received a fully probated suspension for failing to handle clients' cases in a timely manner, refusing to return a file after he had been discharged, and engaging in other conduct not clearly described in the abatement hearing. Attorney Number One testified that

> the other one was . . . a guy working for me. He took some money from his family that they lent him to represent him. The guy was in jail. The court in Dallas appointed him an attorney to represent

him. The attorney got a really good deal for him, got it reduced to a misdemeanor, and pled the case out.

And I was not aware that took place, so they said, "Well, you should have done a better job of supervising the people that work in your office."

I said, "You know what? You're absolutely right. I'll accept the punishment for that." And I got rid of the paralegal that I had.

Attorney Number One explained that the disciplinary order was an agreed order, resulting in the fully probated suspension.

No one designated the trial judge as a witness, called the trial judge as a witness, or moved to recuse the trial judge because the trial judge was a fact witness. The trial judge did not voluntarily step down. The same trial judge presided over all posttrial hearings. At the conclusion of the abatement hearing, the trial court again denied Appellant's motions for new trial.

There are two remaining issues before this court: (1) whether Appellant's plea was entered knowingly, intelligently, and voluntarily, and (2) whether Appellant was denied effective assistance of counsel when he entered his guilty plea on December 13, 2007, or at the punishment hearing on June 13, 2008.

A trial court's ruling denying a defendant's motion for new trial is reviewed under an abuse of discretion standard.[2] In considering a motion for

---

[2] *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App.), *cert. denied*, 534 U.S. 855 (2001); *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App.

new trial, the trial court possesses broad discretion in determining the credibility of the witnesses and in weighing the evidence to determine whether a different result would occur upon retrial.[3] We do not substitute our judgment for that of the trial court, but rather, we decide whether the trial court's decision was arbitrary or unreasonable.[4]

In the case now before this court, we have a swearing match contesting whether Attorney Number One represented to Appellant that he had a special relationship with the judge, whether an ex parte meeting occurred in which the trial judge and Attorney Number One reached a secret agreement to guarantee Appellant community supervision, and whether that representation induced Appellant to enter a plea of guilty that he would otherwise not have entered. Appellant's parents and Attorney Number One's paralegal testified that Attorney Number One had made those representations to Appellant. Appellant's version was slightly different. He testified that Attorney Number One had made the representations and guarantees about which his parents and

---

1995); *Thomas v. State*, 31 S.W.3d 422, 428 (Tex. App.—Fort Worth 2000, pet. ref'd).

[3] *Valle v. State*, 963 S.W.2d 904, 908 (Tex. App.—Texarkana 1998, pet. ref'd); *Dusenberry v. State*, 915 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).

[4] *Lewis*, 911 S.W.2d at 7.

the paralegal testified. But he also testified that Attorney Number One had told him that he would not receive deferred adjudication if he insisted on a jury trial instead of pleading guilty to the court. All four denied that Attorney Number One had told them that there was any possibility of penitentiary time if Appellant entered a guilty plea.

Attorney Number One denied any guarantees or representations concerning a special relationship with the judge. He testified that he had told Appellant merely that he thought Appellant had a good chance of receiving probation if he entered a guilty plea.

In the instant case, Appellant was charged with aggravated robbery with a deadly weapon, an article 42.12, section 3g offense.[5] This charge was but one in a long string of criminal accusations beginning in Appellant's youth. When Appellant appeared before the trial court in the case now before this court, he was nineteen years old. He had already been charged with eight different offenses, including three robberies over a period of five weeks in December 2003 and January 2004. He successfully completed a juvenile probation for the third robbery. In January 2005, Appellant was involved in a car theft and later received deferred adjudication community supervision for an

_____

[5] Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(1)(F) (Vernon Supp. 2009).

unrelated possession of marijuana offense. A subsequent March 2006 robbery charge arising from an attempted drug purchase was dismissed.

When Appellant was seventeen, he and some companions committed two aggravated robberies with a pistol that Appellant had obtained. In the first one, he drove the getaway car. Several hours after the first robbery, the group accosted another man who claimed to have no money, so they moved on to a second mark and successfully took his money. The second successful aggravated robbery is the offense at issue in the instant matter.

Appellant entered an open plea of guilty to the second successful aggravated robbery, and at the subsequent sentencing, he admitted his complicity in the first aggravated robbery, although he had not been charged with that offense. He also admitted his previous crimes but assured the trial court that he had changed his life since attending Kansas State University on a football scholarship and begged for a lenient sentence.

Never did Appellant claim that he was not actually guilty or that a jury would have found him not guilty. The plea documents clearly inform him of the entire range of punishment, and there is no suggestion that Appellant was unable to read and understand the documents he executed. Indeed, Appellant testified at a hearing on his motions for new trial that his lawyer had told him that he could receive deferred adjudication only if he entered a plea of guilty.

8

This is almost correct. Because aggravated robbery with a deadly weapon is an article 42.12, section 3g offense, a trial judge could not grant Appellant "regular" community supervision.[6] He could receive only deferred adjudication community supervision from the trial judge, as opposed to regular community supervision, and then only if he entered a plea of guilty or nolo contendere.[7] A plea of not guilty would make him ineligible for deferred adjudication community supervision, and a jury cannot grant deferred adjudication community supervision.[8]

The trial court went beyond the written admonishments and asked Appellant if he understood that there was no guarantee that his guilty plea would result in probation and that the full range of punishment was available. Appellant assured the trial court that his guilty plea was made freely and voluntarily.

Appellant also testified that he was "not trying to avoid some punishment." He explained that, although he did not want to go to prison, he was open to "doing a little county time." He also admitted that his prior two

---

[6] See *id.* art. 42.12, § 5(d).

[7] See *id.* art. 42.12, § 5(a), (d).

[8] *See id.*

9

probations "didn't really work too well" because he had "continued to commit crimes."

We hold that the trial court did not abuse its discretion by denying the motion for new trial because Appellant did not satisfy his burden to show that his plea was involuntary as a result of Attorney Number One's advice and did not satisfy his burden to show ineffective assistance of counsel. We overrule Appellant's issues and affirm the trial court's judgment.

Due to the disturbing allegations in the record concerning Attorney Number One's conduct, however, we also order the clerk of this court to transmit a copy of this opinion to the Office of the Chief Disciplinary Counsel and the Office of the General Counsel of the State Bar of Texas.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 29, 2009

10