

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00170-CR

JERRY MICHAEL SATTERWHITE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 15-0275X

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

Jerry Michael Satterwhite was convicted of sexual assault of a child and sentenced to five years in prison. *See* TEX. PENAL CODE ANN. § 22.011(a)(2) (West 2019). Satterwhite moved for a new trial, arguing the discovery of new evidence. The trial court denied his motion.

On appeal, Satterwhite argues that the trial court erred in denying his motion for new trial. We affirm the trial court's judgment because Satterwhite failed to show that the alleged newly discovered evidence was unknown to him at the time of trial.

## I. Factual Background

The facts of the case are largely undisputed. Satterwhite lived with his ex-wife, Wilda Lee Satterwhite, their one child together, and her three other children, including T.J., a fourteen-year-old girl. On June 16, 2015, after having worked the night shift, Satterwhite returned to Wilda's house, showered, and got into bed with Wilda. Shortly thereafter, Wilda woke and left for work, leaving Satterwhite and T.J. at the house alone, as the other children were gone.

Around mid-afternoon, T.J. was washing dishes and Satterwhite walked into the kitchen, drank some Redline energy drink, and without saying anything, returned to bed. Later in the day, T.J. entered Satterwhite's bedroom to talk to him, but when she sat on the bed that Satterwhite was lying in, he rubbed her back, then touched her breasts under her shirt. He partially took down her pants and touched the inside of her vagina with his finger. Satterwhite abruptly stopped touching her, saying, "I can't control myself," or, "Sometimes I can't control myself." He left the house to pick Wilda up from work, and during the drive back to the house, he told her something had happened between T.J. and him. Upon returning home, T.J. told her mother what had happened,

2

she called the police, and Satterwhite left. During Satterwhite's recorded interview with the police, he confessed to having touched the girl and expressed deep regret and shame. He was arrested and charged with sexual assault of a child.

T.J., Wilda, and two law enforcement officers testified for the State, and Satterwhite's recorded police interview was played for the jury. Throughout the proceedings, Satterwhite did not deny that he had touched and digitally penetrated T.J. as alleged in the indictment. He claimed to have no memory of his actions, or the events immediately preceding them, such as drinking the Redline, because he claimed they occurred while he was in a somnambulistic state—that is, sleepwalking—and he was, therefore, unable to form the intent required for a conviction. He testified that he awoke from sleep to realize that he was touching T.J. and that, upon waking, he immediately stopped.

Several members of Satterwhite's family, his current wife, and Satterwhite himself testified that the actions alleged in the indictment were out of character for him and that he had a history of sleepwalking and nightmares as a child, sleepwalking as an adult, talking and screaming in his sleep, as well as touching and trying to initiate sex while asleep. In addition, Dr. Thomas G. Allen, a forensic psychologist, testified that somnambulism, commonly known as sleepwalking, is a state in which a person is acting and moving, but not conscious, and that, if Satterwhite was in such a state when he touched T.J., he would have been unable to form the requisite intent to commit the charged offense. Allen testified that, due to several factors such as a childhood history of sleepwalking and night terrors, working a night shift, making no effort to hide the behavior, eating,

3

and prior sexual behaviors, there was a potential that Satterwhite was sleepwalking during the event in this case.

Apparently belying Satterwhite's claims of being in a somnambulistic state during the events at issue, he spoke to the police about details and events that occurred prior to his alleged point of waking. Specifically, he claimed that T.J. got into bed with him, that he rubbed her back, and that his hands started to move "just all over her." Satterwhite testified that he knew these details because he had pieced together what happened from prior telephone and text conversations with Wilda, where she told him T.J.'s side of the story. While the State admitted twelve text messages between Wilda and Satterwhite into evidence, they did not reference the additional pre-waking details from Satterwhite's police interview, and Wilda denied having had any other communication with Satterwhite. The State focused on this point during its closing argument, maintaining that, because Wilda had had no further communication with Satterwhite, the only way he could have known the "pre-waking" details and the order of events was if he had been awake and aware when they happened.

The jury found Satterwhite guilty of sexual assault of a child, and following the jury's recommendation, the trial court sentenced him to five years in prison. Satterwhite filed a motion for new trial, attaching telephone records from the AT&T account belonging to Satterwhite's mother, Lisa Coleman. Satterwhite argued that he should receive a new trial because the telephone records, which show numerous text communications between Wilda and Satterwhite, in addition to the twelve text messages admitted at trial, amounted to newly discovered evidence. After a

4

hearing, the trial court denied the motion for new trial without giving a specific reason for doing so, and Satterwhite appealed.

## II. Analysis

In his sole point of error, Satterwhite contends that the trial court erred in denying his motion for new trial because the telephone records establishing the existence of additional communication between Satterwhite and Wilda were newly discovered evidence that was material to his defense and the question of his guilt.

### A. Standard of Review

Article 40.001 of the Texas Code of Criminal Procedure provides, "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2018). In order for a defendant to receive a new trial under this statute, he must satisfy the following four-part test:

(1) the newly discovered evidence was unknown to the defendant at the time of trial;

(2) the defendant's failure to discover or obtain the new evidence was not due to the defendant's lack of due diligence;

(3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and

(4) the new evidence is probably true and will probably bring about a different result in a new trial.

*Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014); *Keeter v. State*, 74 S.W.3d 31, 36–37 (Tex. Crim. App. 2002). A failure to establish any of the four requirements warrants denial of the motion. *Delamora v. State*, 128 S.W.3d 344, 354 (Tex. App.—Austin 2004, pet. ref'd).

5

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995); *Delamora*, 128 S.W.3d at 359. As a reviewing court, we do not substitute our judgment for that of the trial court; we decide whether the trial court's decision was arbitrary or unreasonable. *Delamora*, 128 S.W.3d at 359. "Motions for new trial based on newly discovered evidence are not favored by the courts and are viewed with great caution." *Dotson v. State*, 28 S.W.3d 53, 55 (Tex. App.—Texarkana 2000, pet. ref'd) (citing *Drew*, 743 S.W.2d at 225–26).

### B.  Application of Law to Facts

Satterwhite testified that he was able to speak to the police regarding the details of what happened prior to his waking because he had pieced the details together from prior telephone and text conversations with Wilda where she told him T.J.'s side of the story. While the State admitted into evidence twelve text messages between Wilda and Satterwhite, they did not reference the additional pre-waking details from Satterwhite's police interview, and Wilda denied having had any other communication with Satterwhite.

However, the telephone billing records attached to the motion for new trial show an additional twenty text messages between Satterwhite and Wilda during the relevant time period. Satterwhite contends that his discovery of the billing records warranted the granting of a new trial because the existence of additional calls and text messages "would have strongly bolstered" his defense of somnambulism by corroborating his claim that he and Wilda communicated prior to his police interview and would have established that Wilda's denial of further communication was "inaccurate," in addition to drawing the remainder of her testimony into question.

6

The first requirement of the four-part test is that the movant must show that he was unaware of the newly discovered evidence at the time of trial. However, Satterwhite did not provide new trial testimony or other evidence that the telephone records were unknown to him at the time of trial. To the contrary, on direct examination, Satterwhite testified that he "tried to get phone records" to support his repeated testimonial claims of additional telephone and text communications with Wilda. His own testimony established that he knew the calls and texts occurred and that he knew that evidence of those communications existed. *See Kelly v. State*, No. 10-09-00312-CR, 2010 WL 3503884, at *6 (Tex. App.—Waco Sept. 8, 2010, pet. ref'd) (mem. op., not designated for publication) (one's use of a cell phone is squarely within the user's knowledge); *Ramon v. State*, No. 04-96-00881-CR, 1997 WL 438755, at *3 (Tex. App.—San Antonio Aug. 6, 1997, pet. ref'd) (per curiam) (not designated for publication) (placing a telephone call imparts the knowledge that evidence of the call existed).[1] Satterwhite's cell phone usage was a part of Coleman's telephone and data plan, and the telephone records at issue were a part of her AT&T billing statement for June 2, 2015, through July 1, 2015, more than three years prior to trial. Therefore, these records were accessible and available to be sought prior to trial had Satterwhite disclosed the additional communications to his counsel.

While the evidence at the motion for new trial hearing shows that until the trial, Satterwhite's counsel was unaware of the additional calls and text messages, "[t]he courts regard the defendant and his or her attorneys as a 'knowledge unit' so that what is known to one is known

---

[1]Unpublished opinions may be cited to illustrate the reasoning employed when faced with similar facts "rather than simply arguing without reference, that same reasoning." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

to all for purposes of determining whether the evidence was known before trial." *Delamora*, 128 S.W.3d 355 (quoting 43A George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 41.42 (2d ed. 2001)); *see also Sawyer v. State*, 778 S.W.2d 541, 545 (Tex. App.—Corpus Christi 1989, pet. ref'd); *Zamora v. State*, 647 S.W.2d 90, 94–95 (Tex. App.—San Antonio 1983, no pet.).  Therefore, the trial court was within its discretion to find that Satterwhite failed to meet the first requirement and deny his motion for new trial.  *See Carsner*, 444 S.W.3d at 2–3.  Because he failed to meet the first requirement, we need not address the remaining three requirements.  *See Delamora v. State*, 128 S.W.3d 354.

### III.    Conclusion

We overrule Satterwhite's sole point of error and affirm the trial court's judgment.


Ralph K. Burgess
Justice


Date Submitted:     March 7, 2019
Date Decided:       April 12, 2019

Do Not Publish